IN THE SUPREME COURT OF NORTH CAROLINA

No. 63A17

Filed 17 August 2018

STATE OF NORTH CAROLINA

v.

ANTWARN LEE ROGERS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 796 S.E.2d 91 (2017), finding no error in part and reversing and remanding in part judgments entered on 13 August 2015 by Judge W. Allen Cobb Jr. in Superior Court, New Hanover County. Heard in the Supreme Court on 12 March 2018.

*Joshua H. Stein, Attorney General, by Kathleen N. Bolton, Assistant Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Wyatt Orsbon, Assistant Appellate Defender, for defendant-appellee.*

MARTIN, Chief Justice.

During a drug investigation, law enforcement officers pulled defendant over and discovered two bags of crack cocaine hidden behind the gas-cap door of the car that he was driving. After the trial court denied defendant's motion to dismiss, defendant was convicted of, among other things, keeping or maintaining a vehicle which is used for the keeping or selling of controlled substances. We hold that it can reasonably be inferred from the evidence at trial, when viewed in the light most

favorable to the State, that defendant had kept the car that he was driving, and that he was using that car to store crack cocaine when he was arrested. We therefore conclude that the trial court correctly denied defendant's motion to dismiss as to the charge of keeping or maintaining a vehicle which is used for the keeping or selling of controlled substances.

Detective Evan Luther of the New Hanover County Sheriff's Office Vice and Narcotics Unit became familiar with defendant over the course of a months-long drug investigation. On 8 August 2013, while that investigation was ongoing, Detective Luther obtained information implicating defendant in drug activity that, according to Detective Luther's trial testimony, "needed to be acted upon that day." Detective Luther also learned that defendant would be driving a particular white Cadillac and staying in Room 129 of a specific Econo Lodge hotel. After obtaining this information, Detective Luther began the process of getting a search warrant for the hotel room and the Cadillac. While he was doing so, he told assisting officers that defendant was "wanted on outstanding warrants" and that, as a result, officers could initiate contact with defendant at any time.

As part of Detective Luther's investigation, Lieutenant Leslie Wyatt of the New Hanover County Sheriff's Office went to set up surveillance at the hotel where defendant was expected to be. When Lieutenant Wyatt got there, he spotted a Cadillac matching the description that Detective Luther had given him. Lieutenant Wyatt briefly went to a nearby gas station, and when he got back, the Cadillac was

gone. About ten minutes after Lieutenant Wyatt had set up stationary surveillance on the hotel, the Cadillac returned and parked in front of Room 129. Defendant, who was the only person in the car, got out and went into that room. He stayed there for about forty-five minutes but then left the room and drove away in the Cadillac. At least one officer stayed behind to conduct surveillance on the hotel room.

Other officers followed defendant as he drove to an apartment complex, turned around, left the complex, and continued driving. This behavior was "[i]ndicative of someone seeing if they're being followed," according to Lieutenant Wyatt's trial testimony, so the officers pulled defendant over. Defendant was alone in the car, and the officers arrested him based on his outstanding warrants. While defendant was in custody, his cell phone continuously received calls and text messages. A contact named "Surf City Lick" called a number of times and sent several text messages, and a contact named "Mexican Friend Lick" also called a number of times. The word "lick," Detective Luther testified, is a slang term for someone who purchases drugs. Detective Luther also testified that the contents of some of the text messages, which the arresting officers could see on the screen of the phone, could be consistent with a customer's asking if a drug delivery was forthcoming.

The officers who arrested defendant took defendant and the Cadillac back to the hotel. Detective Luther arrived at the hotel shortly thereafter with a signed warrant to search the Cadillac and Room 129 of the hotel. Collectively, the officers at the hotel had conducted surveillance for about an hour and a half before they

*Opinion of the Court*

executed the search warrant.  When officers searched the Cadillac, they found two purple plastic bags hidden in the small space behind the door covering the gas cap. Both bags contained crack cocaine.  As in many cars, the gas-cap compartment of the Cadillac was accessible only by operating a switch inside the car.  When the officers searched inside the car, they found a marijuana cigarette, $243 in cash hidden inside a boot, and a service receipt dated 29 May 2013 with defendant's name printed on it.

Meanwhile, the officers who searched the hotel room found two purple plastic bags containing a much larger amount of crack cocaine hidden behind the toilet paper holder in the bathroom.  The purple bags in the hotel room were the same type of bags as those found in the gas-cap compartment of the Cadillac.  Officers also found a number of small Ziploc bags in the hotel room—bags that, according to Detective Luther, drug dealers commonly use to package drugs into smaller amounts for sale. Finally, officers found a digital scale disguised to look like an MP3 player in the hotel room.  Investigating officers determined that the car was registered to someone other than defendant, that the hotel room was checked out under someone else's name, and that defendant did not leave personal luggage inside the hotel room.  These practices, Detective Luther testified, are consistent with drug sale activity.

Defendant was indicted for possession with intent to manufacture, sell, and/or deliver cocaine; manufacture of cocaine; possession of cocaine; keeping or maintaining a vehicle which is used for the keeping or selling of a controlled substance; possession of drug paraphernalia; possession of up to one-half ounce of marijuana; and having

attained the status of a habitual felon. The State declined to proceed on the manufacture-of-cocaine charge. At the close of the State's evidence, defendant moved to dismiss all of the remaining charges against him. The trial court granted the motion as to the possession-of-cocaine charge, but denied the motion as to all other remaining charges. The jury found defendant guilty of all of these charges.

Defendant appealed to the Court of Appeals, arguing, among other things, that the trial court erred in denying his motion to dismiss the charge of keeping or maintaining a vehicle which is used for the keeping or selling of a controlled substance. In an opinion that split on this issue, the Court of Appeals reversed that conviction. The majority held that there was insufficient evidence that defendant kept or maintained the Cadillac, and also held that "there was insufficient evidence that defendant used [the Cadillac] on any prior occasion for the purpose of keeping or selling a controlled substance." *State v. Rogers*, ___ N.C. App. ___, ___, ___, 796 S.E.2d 91, 96, 97 (2017) (emphasis omitted). The judge who dissented on this issue determined that the evidence, taken together, was sufficient to show that defendant kept or maintained the Cadillac over a period of time for the purpose of keeping cocaine. *Id.* at ___, 796 S.E.2d at 101-02 (Stroud, J., concurring in part and dissenting in part). The State gave notice of appeal based on the partially dissenting opinion.

Defendant was convicted of keeping or maintaining a car which is used for the keeping or selling of a controlled substance in violation of N.C.G.S. § 90-108(a)(7). That provision says, in pertinent part, that "[i]t shall be unlawful for any person . . .

[t]o knowingly keep or maintain any . . . vehicle . . . which is used for the keeping or selling of [controlled substances] in violation of this Article." N.C.G.S. § 90-108(a)(7) (2017). To prove a defendant guilty under this portion of subsection 90-108(a)(7), the State must prove that the defendant "(1) knowingly (2) ke[pt] or maintain[ed] (3) a vehicle (4) which [wa]s used for the keeping or selling (5) of controlled substances." *State v. Mitchell*, 336 N.C. 22, 31, 442 S.E.2d 24, 29 (1994). For a criminal prosecution to survive a motion to dismiss, the State must present "substantial evidence of all the material elements of the offense charged and [substantial evidence] that the defendant was the perpetrator of the offense." *State v. Campbell*, 368 N.C. 83, 87, 772 S.E.2d 440, 444 (2015) (quoting *State v. Myrick*, 306 N.C. 110, 113-14, 291 S.E.2d 577, 579 (1982)). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (quoting *State v. Turnage*, 362 N.C. 491, 493, 666 S.E.2d 753, 755 (2008)). "[W]e must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (citing *State v. Benson,* 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992)). "Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then 'it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.'" *Id.* at 75-76, 430 S.E.2d at

919 (alteration in original) (emphasis omitted) (quoting *State v. Thomas,* 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978)).

In this case, officers conducted surveillance for approximately an hour and a half on the day that defendant was arrested. During that time, they did not see any person other than defendant driving or occupying the Cadillac. A subsequent search of the Cadillac revealed two bags of crack cocaine stored in the gas-cap compartment. Thus, the only issues before us are whether there was substantial evidence to show that defendant "ke[pt] or maintain[ed]" the Cadillac and, if so, whether there was substantial evidence that the Cadillac was "used for the keeping . . . of" controlled substances.[1]

"In the construction of any statute, . . . words must be given their common and ordinary meaning, nothing else appearing." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202-03 (1974). To quote the beginning of subsection 90-108(a)(7) at greater length than we did above, that subsection makes it "unlawful for any

---

[1] A defendant may be convicted of violating subsection 90-108(a)(7) if he keeps or maintains a vehicle which is used for "the keeping *or* selling of" drugs. (Emphasis added.) The Court of Appeals majority failed to analyze whether substantial evidence supported the theory that the Cadillac that defendant was driving was used for the *selling* of drugs—even though the State made that argument on appeal. Because the Court of Appeals majority did not conduct this analysis, *see Rogers*, ___ N.C. App. at ___, 796 S.E.2d at 94-98, the opinion that dissented on this issue did not do so either, *see id.* at ___, 796 S.E.2d at 100-02 (Stroud, J., concurring in part and dissenting in part). The State, moreover, did not petition this Court to consider any issues beyond the scope of that partially dissenting opinion. We therefore limit our analysis to whether there was substantial evidence that defendant used the Cadillac to *keep* drugs. *See* N.C. R. App. P. 16(b).

person" to "keep or maintain any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever" for certain purposes or uses. The meaning of the term "keep," as it is used in referring to a person who "keep[s]" a vehicle, building, or other place, is clear from the context in which it appears. When you "keep" a "shop," for instance—that is, when you are a shopkeeper—you have possession of the shop for a designated purpose or use (usually to sell goods). You generally will have possessed that shop for at least a short period of time, but in some instances, you may be said to be "keep[ing]" a shop even when you have just opened it, if the circumstances indicate that you intend to retain the shop for continued use in the future. *Cf. The New Oxford American Dictionary* 952 (3d ed. 2010) (defining "keep" as "have or retain possession of" or "retain or reserve for use in the future"). This possession must have occurred for at least a short period of time, or the circumstances must indicate an intent to retain that property in the future (and in many cases, both may be evident). Thus, the word "keep," in the "keep or maintain" language of subsection 90-108(a)(7), refers to possessing something for at least a short period of time—or intending to retain possession of something in the future—for a certain use.

In this case, officers conducted surveillance for about an hour and a half before searching the Cadillac and defendant's hotel room. During their surveillance, the officers saw defendant arrive at the hotel in the Cadillac, stay in his room awhile, and then leave in the Cadillac. Defendant, moreover, was the only person that the officers

saw using the car. And let's not forget an additional, very important piece of evidence: the service receipt found inside the Cadillac bearing defendant's name—a receipt that bore a date from about two and a half months before defendant's arrest. Viewing this evidence in the light most favorable to the State, and drawing all reasonable inferences from it, we hold that a reasonable jury could conclude that defendant had possessed the car for about two and a half months, at the very least.[2] The State therefore presented sufficient evidence that defendant "ke[pt]" the Cadillac.

We thus turn to the other issue before us: whether the State presented sufficient evidence that defendant used the Cadillac "for the keeping . . . of" illegal drugs. N.C.G.S. § 90-108(a)(7). Ordinarily, "words used in one place in [a] statute have the same meaning in every other place in the statute." *Campbell v. First Baptist Church of Durham*, 298 N.C. 476, 483, 259 S.E.2d 558, 563 (1979) (first citing *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 55 S. Ct. 50 (1934); and then citing *Wells v. Hous. Auth.*, 213 N.C. 744, 197 S.E. 693 (1938)). But there are exceptions to that rule, and this is one. By making it a crime to "keep" a car "which is used for the keeping" of controlled substances, subsection 90-108(a)(7) uses the

---

[2] Possessing a car for two and a half months is sufficient to show that an individual "ke[pt]" a car under subsection 90-108(a)(7). But we do not mean to imply that possession for that long is necessary to satisfy that element. "[K]eep[ing]" a car for a much shorter period of time may suffice—we need not, and do not, take any position on that to decide this case. And, of course, as we have already suggested, the State may also be able to prove that a defendant has "ke[pt]" a car by proving that the defendant possessed a car, and that he intended to continue possessing it in the future, when he was arrested.

word "keep" and its variant "keeping" to mean different things. We have already noted that in the first instance, the word "keep" refers to possessing something for at least a short period of time, or to possessing something currently and intending to retain possession of it in the future, for some designated purpose or use. In the second instance, however, the word "keeping" is used to refer to *keeping drugs in* (in this case) *a car*. When someone "keep[s]" an object in his car, that word does not refer to possessing something for a designated use; it refers to *storing* that object in his car. That is the "common and ordinary meaning" of the word "keeping" in this context. *See In re Clayton-Marcus*, 286 N.C. at 219, 210 S.E.2d at 202. There is no reason to interpret the use of the word "keeping" in subsection 90-108(a)(7) differently, and, in fact, no other interpretation would make sense. So when subsection 90-108(a)(7) speaks of "the keeping . . . of" drugs, it is referring to the storing of drugs.

In this case, the State presented substantial evidence that defendant was using the Cadillac to store crack cocaine. Officers found the cocaine hidden in, of all places, the gas-cap compartment. At no point did the officers see anyone other than defendant use the Cadillac or access its gas-cap compartment, nor did the officers see defendant himself access the gas-cap compartment at any point during their observation period. So a jury could reasonably infer that the bags of cocaine had been placed there before the Cadillac was under stationary surveillance—indeed, that seems to be the only plausible inference. And defendant's actions—arriving at the hotel, staying there for about forty-five minutes while the drugs evidently stayed

hidden in the gas-cap compartment, and leaving in the Cadillac again—seem to indicate that defendant was not using the car only to transport drugs from one place to another.[3] Plus, a defendant who wants to store contraband will, all other things equal, want to store it in a hidden place, which is exactly what putting the cocaine in the gas-cap compartment would accomplish. Finally, putting the drugs in a place that is somewhat hard to access—and that is not inside the passenger compartment of the car at all—likewise suggests storage rather than mere transportation. So, when viewing this evidence in the light most favorable to the State and drawing all reasonable inferences from it, the evidence indicates that defendant was using the Cadillac to store cocaine within it.

In addition, the evidence suggesting that defendant was involved in selling drugs also permits us to draw a reasonable inference that defendant was using the Cadillac to store cocaine. Officers found $243 in cash hidden inside a boot kept in the car, and the continuous stream of calls and messages to defendant's phone when defendant was in custody suggested that he was about to conduct a drug sale. The cocaine found inside the gas-cap compartment of the Cadillac, moreover, was stored in purple plastic bags of the same color, type, and size as the bags of cocaine that

---

[3] Of course, if a defendant used a car to transport illegal drugs to, for instance, a drug sale, that fact might well be evidence that he was "us[ing]" the car "for the . . . *selling of*" controlled substances. *See* N.C.G.S. § 90-108(a)(7) (emphasis added). But, as we have already said, we are not addressing the "selling" element of subsection 90-108(a)(7) due to the limited scope of this appeal.

officers found in defendant's hotel room. And when officers searched the hotel room, they also found a number of smaller Ziploc bags and a digital scale that was disguised to look like something else. These circumstances, when viewed in the light most favorable to the State, indicate that defendant used the hotel room to split up large amounts of crack cocaine into smaller portions that he would then store inside the Cadillac until they were sold.

This Court has discussed subsection 90-108(a)(7) on only one prior occasion, in *State v. Mitchell*, 336 N.C. 22, 442 S.E.2d 24 (1994). In that case, the defendant entered a convenience store with two bags of marijuana in his shirt pocket. *Id.* at 26, 442 S.E.2d at 26. The store clerk, an off-duty police officer, asked about the bags, which the defendant admitted contained marijuana, and the defendant gave them to her. *Id.* The store clerk then called the police, at which time the defendant left the store. *Id.* The next day, the defendant was arrested for possession of marijuana. *Id.* Police found a marijuana cigarette inside the defendant's car, and when the police searched the defendant's house, they found additional evidence: a scale with some cocaine residue, as well as small plastic bags, two marijuana cigarettes, and rolling papers. *Id.*

The main dispute in *Mitchell* was whether the State presented substantial evidence that the defendant's car "was used for keeping or selling marijuana." *Id.* at 32, 442 S.E.2d at 29. *Mitchell* held, and we reaffirm today, that subsection 90-108(a)(7) does not "create a separate crime simply because the

controlled substance was temporarily in a vehicle." *Id.* at 33, 442 S.E.2d at 30. In other words, merely possessing or transporting drugs inside a car—because, for instance, they are in an occupant's pocket or they are being taken from one place to another—is not enough to justify a conviction under the "keeping" element of subsection 90-108(a)(7).[4] *See id.* at 32-33 & n.1, 442 S.E.2d at 30 & n.1. Rather, courts must determine whether the defendant was using a car for the *keeping* of drugs—which, again, means the *storing* of drugs—and courts must focus their inquiry "on the *use,* not the contents, of the vehicle." *See id.* at 34, 442 S.E.2d at 30.

In *Mitchell*, the State's evidence from the night that the defendant went to the convenience store was sufficient to raise an inference that the defendant temporarily possessed marijuana in his car, but nothing more. *Id.* at 33, 442 S.E.2d at 30. And although the State's evidence also indicated that police found a single marijuana cigarette in the defendant's car the next day, *see id.*, that alone does not indicate that the car was being used to *store* the cigarette; people often leave cigarettes or other small moveable things in their cars but then take them out soon thereafter. This Court correctly reasoned that the sum of this evidence was insufficient to raise a reasonable inference that the defendant was using the car to "keep[ ]" marijuana,

---

[4] As we have already suggested in footnote 3, though, evidence that a defendant has transported or possessed drugs inside a car may, in conjunction with additional evidence, be enough to satisfy the "*selling*" element of subsection 90-108(a)(7). (Emphasis added.)

which is what subsection 90-108(a)(7) prohibits. *See id.* Our analysis today is therefore consistent with the holding of *Mitchell*.

Even though *Mitchell* reached the correct result, however, part of its reasoning was inconsistent with the text of subsection 90-108(a)(7). Specifically, *Mitchell* interpreted "the keeping . . . of [drugs]" to mean "not just possession, but possession that occurs over a duration of time." *Id.* at 32, 442 S.E.2d at 30. But the statutory text does not require that drugs be kept for "a duration of time." As we have seen, the linchpin of the inquiry into whether a defendant was using a vehicle, building, or other place "for the keeping . . . of" drugs is whether the defendant was using that vehicle, building, or other place for the storing of drugs. So, for instance, when the evidence indicates that a defendant has possessed a car for at least a short period of time, but that he had just begun storing drugs inside his car at the time of his arrest, that defendant has still violated subsection 90-108(a)(7)—even if, arguably, he has not stored the drugs for any appreciable "duration of time." The critical question is *whether* a defendant's car is used to store drugs, not *how long* the defendant's car has been used to store drugs for. As a result, we reject any notion that subsection 90-108(a)(7) requires that a car kept or maintained by a defendant be used to store drugs for a certain minimum period of time—or that evidence of drugs must be found in the vehicle, building, or other place on more than one occasion—for a defendant to have violated subsection 90-108(a)(7). But again, merely having drugs in a car (or other place) is not enough to justify a conviction under subsection

90-108(a)(7). The evidence and all reasonable inferences drawn from the evidence must indicate, based "on the totality of the circumstances," *id.* at 34, 442 S.E.2d at 30, that the drugs are also being stored there. To the extent that *Mitchell*'s "duration of time" requirement conflicts with the text of subsection 90-108(a)(7), therefore, this aspect of *Mitchell* is disavowed.

In sum, viewing the evidence in this case in the light most favorable to the State and drawing all reasonable inferences from that evidence, a reasonable jury could find that defendant kept the Cadillac in question and that defendant used that Cadillac to store crack cocaine. The trial court correctly denied defendant's motion to dismiss the charge of keeping or maintaining a vehicle which is used for the keeping or selling of controlled substances. We therefore reverse the decision of the Court of Appeals as to the issue before us. The remaining issues that the Court of Appeals addressed are not before us, and we leave its decision as to those issues undisturbed.

REVERSED.