IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-780

Filed: 7 April 2020

Union County, Nos. 16 CRS 53661-63

STATE OF NORTH CAROLINA

v.

MARK DOUGLAS DUDLEY, Defendant.

Appeal by Defendant from judgments entered 24 January 2019 by Judge Jeffery K. Carpenter in Union County Superior Court. Heard in the Court of Appeals 4 February 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Scott Stroud, for the State.*

*Richard Croutharmel for Defendant-Appellant.*

COLLINS, Judge.

Defendant Mark Douglas Dudley appeals from the trial court's judgments entered upon his convictions for: (1) trafficking in methamphetamine by transportation; (2) trafficking in methamphetamine by possession; (3) maintaining a vehicle to keep or sell controlled substances; and (4) possession of drug paraphernalia. Defendant contends that the trial court erred by declining to sanction the State for failing to comply with its discovery obligations and by denying

Defendant's motion to dismiss the maintaining-a-vehicle charge. We affirm in part and discern no error in part.

## I. Background

The evidence presented at Defendant's trial tended to show the following: early in the morning on 1 September 2016, Deputy Brad Belk of the Union County Sheriff's Office received a call from Officer Stephen Goodwin of the Town of Wadesboro Police Department. Goodwin told Belk that he had spotted a black Chevrolet Camaro IROC parked outside of a "known drug house[.]" Belk relayed the make, model, and license-plate number to Officer James Pedersen of the Town of Wingate Police Department, who began looking out for the vehicle.

A black Camaro IROC with a license-plate number matching that relayed by Belk soon passed Pedersen while he was sitting at a gas station with, among others, Deputy Tommy Gallis of the Union County Sheriff's Office, who was in his own vehicle with his canine. Pedersen began to follow the vehicle and ran the license-plate number through a vehicle-registration database, which showed that Defendant was the registered owner of the vehicle. Pedersen also noticed that the vehicle had an obscured inspection sticker and did not have a rear-view mirror, and soon initiated a traffic stop. The vehicle, driven by Defendant, pulled into a gas station.

Pedersen approached the vehicle and asked Defendant for his driver's license and registration. Pedersen noticed that Defendant had open sores on his left arm

which, based upon his training and experience, Pedersen believed were consistent with drug use. Gallis had his canine at the vehicle, and the officers asked Defendant to step out of the vehicle, or to turn off the ignition, in the interest of officer safety. Defendant refused to heed the officers' request, and Gallis reached into the vehicle and removed the keys from the ignition. Gallis then ran the canine around the vehicle, and the canine alerted on the driver's side where Defendant was seated. The officers again asked Defendant to step out of the vehicle, and eventually Defendant did so. Pedersen asked Defendant whether he had anything incriminating on his person, and Defendant stated that he had a pipe for using methamphetamine in his pocket. Pedersen seized the pipe and placed Defendant under arrest.

The officers then searched the vehicle. They found a tire-sealant can with a false bottom that contained a plastic baggie holding a clear crystalline substance. One of the officers conducted a field test of the substance, which tested positive for methamphetamine. The officers then seized the can and the substance, cited Defendant for the trafficking violations, and took Defendant to jail in connection with the suspected drug activity. Analysis by the State Bureau of Investigation determined that the substance was approximately 28.29 grams of methamphetamine.

On 24 April 2017, Defendant was indicted by a Union County grand jury for: (1) trafficking in more than 28 but less than 200 grams of methamphetamine by transportation; (2) trafficking in more than 28 but less than 200 grams of

methamphetamine by possession; (3) maintaining a vehicle to keep or sell controlled substances; (4) possession with intent to sell or deliver methamphetamine; and (5) possession of drug paraphernalia. On 19 June 2018, Defendant filed a motion to suppress all evidence seized from his vehicle during the traffic stop, arguing that his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, section 20 of the North Carolina Constitution had been violated when the officers searched his vehicle. In his motion to suppress, Defendant argued that Pedersen had only cited an "unknown source" of the information he had received from Belk which eventually led to Defendant's arrest, and therefore there were no "objective, specific, or articulable facts" to justify any suspicion that Defendant was in possession of any controlled substance at the time Defendant's car was searched. Defendant's motion to suppress came on for hearing on 28 August 2018. At the motion-to-suppress hearing, Belk testified that Goodwin was the source of his tip to Pedersen, and that Goodwin had told him that the Camaro was parked outside of a known drug house, but Belk admitted that he had not so specified in the report he created for the district attorney's office. Defendant's trial counsel argued that Defendant had not been made aware of Goodwin's identity prior to the hearing, saying that "[a]ll of a sudden we're hearing about law enforcement officers who may well be credible, names that had never been provided in two years."

The prosecutor stated at the hearing that "there ha[d] been a little bit of difficulty in getting all the information to" Defendant's trial counsel, noting that she had followed up with Belk regarding the source of his information and that Belk had told her it was an officer with the Town of Wadesboro Police Department, but that she had not received a name from Belk and had requested that Belk provide a supplemental report to her. The prosecutor said she had "relayed that information that [she] had"—i.e., that the source was an officer with the Town of Wadesboro Police Department—to Defendant's trial counsel, and Defendant's trial counsel told the trial court that "that was not an issue with the district attorney's office." But the prosecutor argued that the traffic violations provided the bases for the traffic stop, and that the canine was "already present at the time of the stop" and therefore that its sniff of the vehicle, which provided the officers probable cause to search, did not implicate constitutional concerns. The trial court entered an order denying Defendant's motion to suppress on 8 October 2018.

Defendant pled not guilty to all charges on 9 November 2018, and the matter came on for trial on 23 January 2019. At the close of State's evidence on 24 January 2019, Defendant moved to dismiss all of the charges for insufficient evidence. The trial court granted the motion to dismiss the possession-with-intent-to-sell-or-deliver charge, but denied the motions to dismiss the four other charges. The defense rested, and the jury returned guilty verdicts on the remaining charges later that afternoon.

Also that afternoon, the trial court entered judgment upon the convictions, and sentenced Defendant to: (1) 70 to 93 months' imprisonment for each trafficking offense (along with a fine and costs to be imposed as a civil judgment), to run concurrently; and (2) 6 to 17 months' imprisonment for the maintaining-a-vehicle and paraphernalia offenses, to run at the expiration of the earlier sentence, and the trial court suspended that sentence and instead placed Defendant on supervised probation for 24 months at the conclusion of his incarceration for the trafficking offenses. Defendant gave oral notice of appeal in open court.

## II. Discussion

*A. Discovery Sanction*

Defendant first argues that the trial court erred by declining to sanction the State for failing to comply with its discovery obligations.

N.C. Gen. Stat. § 15A-903 generally states that upon motion of a defendant, the State must provide the defendant with, inter alia, the "complete files of all law enforcement agencies, investigatory agencies, and prosecutors' offices involved in the investigation of the crimes committed or the prosecution of the defendant[,]" including "witness statements, investigating officers' notes . . . or any other matter or evidence obtained during the investigation of the offenses alleged to have been committed by the defendant." N.C. Gen. Stat. § 15A-903(a) (2017). That statute also provides that "[o]ral statements shall be in written or recorded form, except that oral

statements made by a witness to a prosecuting attorney outside the presence of a law enforcement officer or investigatorial assistant shall not be required to be in written or recorded form unless there is significantly new or different information in the oral statement from a prior statement made by the witness." *Id.* at § 15A-903(a)(1)(C). Pursuant to N.C. Gen. Stat. § 15A-903(b), if discovery is provided by the State voluntarily pursuant to a written request rather than upon the defendant's motion (as contemplated by N.C. Gen. Stat. § 15A-902), such discovery must conform to the same standards as if a motion had been made.[1] Finally, N.C. Gen. Stat. § 15A-907 is an evergreen provision that requires, inter alia, that once it provides discovery to a defendant, the State must thereafter notify the defendant of any new developments in evidence it discovers prior to or during trial.

N.C. Gen. Stat. § 15A-910 sets forth as follows, in relevant part:

> (a) If at any time during the course of the proceedings the court determines that a party has failed to comply with this Article or with an order issued pursuant to this Article, the court in addition to exercising its contempt powers may:
>
> (1) Order the party to permit the discovery or inspection, or
>
> (2) Grant a continuance or recess, or
>
> (3) Prohibit the party from introducing evidence not disclosed, or
>
> (3a) Declare a mistrial, or

---

[1] The record contains no motion by Defendant seeking discovery, but the exhibits appended to Defendant's motion to suppress indicate either that (1) Defendant made a motion seeking discovery pursuant to N.C. Gen. Stat. § 15A-903 or (2) the State provided discovery voluntarily pursuant to N.C. Gen. Stat. § 15A-902 in this case.

(3b)    Dismiss the charge, with or without prejudice, or

(4)     Enter other appropriate orders.

N.C. Gen. Stat. § 15A-910(a) (2017).

Defendant's argument that the trial court erred by declining to apply a discovery sanction against the State focuses upon the uncontested fact that Defendant was not made aware that the source of Belk's tip to Pedersen was Goodwin[2] until the hearing on Defendant's motion to suppress. Defendant argues that this was a failure by the State to comply with its discovery obligations under N.C. Gen. Stat. §§ 15A-902 to -910 (as set forth in relevant part above), and that the trial court erred by concluding that the State had not violated these statutes and declining to apply some sanction against the State as a result.

"Whether a party has complied with discovery and what sanctions, if any, should be imposed are questions addressed to the sound discretion of the trial court." *State v. East*, 345 N.C. 535, 552, 481 S.E.2d 652, 664 (1997). We will reverse for abuse of discretion "only upon a showing by a litigant that the challenged actions are

---

[2] Although Defendant argues in his brief on appeal that Defendant "learned for the first time at the motion to suppress hearing that the person providing the tip that led to Officer Pedersen's stop of his car was a Wadesboro police officer rather than an 'unknown source[,]'" the transcript from the motion-to-suppress hearing reveals that Defendant's trial counsel there agreed that the prosecutor had made her aware prior to the hearing that the source was an officer with the Town of Wadesboro Police Department, albeit not Goodwin, specifically.

manifestly unsupported by reason." *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980).

The record reflects that: (1) the prosecutor followed up with Belk regarding the source of the tip; (2) Belk told the prosecutor that the source was an officer with the Town of Wadesboro Police Department; (3) the prosecutor requested that Belk provide a supplemental report to her with more information; and (4) the prosecutor told Defendant's trial counsel that the source was an officer with the Town of Wadesboro Police Department. Although it appears that Belk never provided the prosecutor with Goodwin's identity, and accordingly that Defendant was never apprised of Goodwin's identity prior to Belk's testimony that Goodwin was the source on the stand at the motion-to-suppress hearing, the State did provide Defendant with Belk's supplemental report—which Defendant introduced as Exhibit 1/E at the hearing on his motion to suppress—and the record does not reflect that Defendant took any steps to seek to ascertain the identity of the specific officer thereafter. On these facts, we cannot conclude that the trial court abused its discretion in determining that the State had complied with discovery or by declining to apply sanctions against the State for failing to provide him with Goodwin's identity.

*B. Maintaining-a-vehicle Charge*

Defendant next argues that the trial court erred by denying his motion to dismiss the charge of maintaining a vehicle to keep or sell controlled substances,

because the State presented insufficient evidence that Defendant's vehicle was used for storing or selling controlled substances.

This Court reviews a trial court's denial of a motion to dismiss de novo. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). In ruling on a motion to dismiss, "the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015) (internal quotation marks and citation omitted). In reviewing the trial court's decision on appeal, the evidence must be viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (citation omitted).

Defendant was convicted of keeping or maintaining a car which is used for the keeping or selling of a controlled substance, in violation of N.C. Gen. Stat. § 90-108(a)(7). That provision states, in pertinent part, that "[i]t shall be unlawful for any person . . . [t]o knowingly keep or maintain any . . . vehicle . . . which is used for the keeping or selling of [controlled substances] in violation of this Article." N.C. Gen. Stat. § 90-108(a)(7) (2019).

> To prove a defendant guilty under this portion of subsection 90-108(a)(7), the State must prove that the defendant
>
> (1) knowingly

- 10 -

(2) kept or maintained

(3) a vehicle

(4) which was used for the keeping or selling

(5) of controlled substances.

*State v. Rogers*, 371 N.C. 397, 401, 817 S.E.2d 150, 153 (2018) (internal brackets and citation omitted). "[T]he keeping . . . of" drugs referred to in this subsection means "the storing of drugs." *Id.* at 403, 817 S.E.2d at 155.

"The determination of whether a vehicle . . . is used for keeping or selling controlled substances will depend on the totality of the circumstances." *State v. Mitchell*, 336 N.C. 22, 34, 442 S.E.2d 24, 30 (1994). Circumstances our courts have considered relevant to this determination include: the amount of controlled substances found, the presence of drug paraphernalia, the presence of large amounts of cash, and whether the controlled substances were hidden in the vehicle. *See Rogers*, 371 N.C. at 403, 817 S.E.2d at 155; *State v. Alvarez*, 818 S.E.2d 178, 182 (N.C. Ct. App. 2018), *aff'd per curiam*, 372 N.C. 303, 828 S.E.2d 154 (2019); *State v. Dunston*, 256 N.C. App. 103, 106, 806 S.E.2d 697, 699 (2017); *State v. Frazier*, 142 N.C. App. 361, 366, 542 S.E.2d 682, 687 (2001). While no factor is dispositive, "[t]he focus of the inquiry is on the use, not the contents, of the vehicle." *Mitchell*, 336 N.C. at 34, 442 S.E.2d at 30 (emphasis omitted).

In *Rogers*, the State presented sufficient evidence that defendant used a car to keep illegal drugs where law enforcement officers found two purple plastic baggies

containing cocaine in a small space behind the door covering the vehicle's gas cap; a marijuana cigarette and $243 in the vehicle's passenger compartment; and similar purple plastic baggies containing larger amounts of cocaine, a digital scale, and small zip-lock bags in defendant's hotel room. *Rogers*, 371 N.C. at 403, 817 S.E.2d at 155. Similarly, in *Dunston*, the State presented sufficient evidence that defendant used a car to keep illegal drugs where officers observed defendant in the car engaging in activities consistent with those commonly used in distributing marijuana, and officers discovered in the car a travel bag containing a 19.29-gram mixture of heroin, codeine, and morphine; plastic baggies; two sets of digital scales; and three cell phones. *Dunston*, 256 N.C. App. at 106, 806 S.E.2d at 699. Likewise, in *Alvarez*, the State presented sufficient evidence that defendant used a car to keep illegal drugs where officers discovered one kilogram of cocaine wrapped in plastic and oil to evade detection by canine units in a false-bottomed compartment on defendant's truck bed floor. *Alvarez*, 818 S.E.2d at 182.

In this case, as in *Rogers* and *Alvarez*, Defendant attempted to hide the methamphetamine. "[A] defendant who wants to store contraband will, all other things equal, want to store it in a hidden place, which is exactly what putting the" methamphetamine in the false-bottomed tire-sealant can would accomplish. *Rogers*, 371 N.C. at 404, 817 S.E.2d at 155. Moreover, similar to the trafficking amounts of controlled substances found in *Rogers*, *Dunston*, and *Alvarez*, the tire-sealant can

contained more than 28 grams of methamphetamine—an amount consistent with trafficking, not personal use. Additionally, as in *Rogers* and *Dunston*, officers also discovered drug paraphernalia in Defendant's possession.

While "merely having drugs in a car . . . is not enough to justify a conviction under subsection 90-108(a)(7)[,]" *Rogers*, 371 N.C. at 406, 817 S.E.2d at 157, viewing the evidence in this case in the light most favorable to the State and drawing all reasonable inferences from that evidence, a reasonable jury could find that Defendant used the Camaro to store the methamphetamine. The trial court thus correctly denied Defendant's motion to dismiss the charge of keeping or maintaining a vehicle which is used for the keeping or selling of controlled substances.

### III. Conclusion

The trial court did not abuse its discretion in determining that the State had complied with its discovery obligations or by declining to apply sanctions against the State. The trial court thus did not err by denying Defendant's motion to suppress. As the State presented substantial evidence that Defendant's vehicle was used for the keeping or selling of controlled substances, the trial court correctly denied Defendant's motion to dismiss the charge. The trial court's order denying Defendant's motion to suppress is affirmed, and the trial court did not err by denying Defendant's motion to dismiss.

AFFIRMED IN PART AND NO ERROR IN PART.


Judges STROUD and BERGER concur.