IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-239

Filed 4 March 2026

Rutherford County, No. 21CR053458-800

STATE OF NORTH CAROLINA

v.

TRONIE LEMAR HOLLIS

Appeal by defendant from judgment entered 6 April 2023 by Judge J. Thomas Davis in Rutherford County Superior Court. Heard in the Court of Appeals 10 February 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Phillip T. Reynolds, for the State.*
>
> *Blackrose Law, by Gina Balamucki, for the defendant-appellant.*

TYSON, Judge.

Tronie Lemar Hollis, "Defendant," appeals from judgment entered upon his conviction for knowingly keeping or maintaining a vehicle or dwelling for the use, storage, or sale of a controlled substance. We reverse the conviction.

## I. Background

Defendant lived with his girlfriend. On the evening of 12 October 2021, he wanted to spend time with another woman without his girlfriend's knowledge. Defendant's family member, Justin Logan, had been renting a hotel room at the

Baymont Inn in Forest City for over a week. Defendant testified he gave Logan twenty dollars in exchange for Logan's permission to allow Defendant to bring the other woman to the hotel room.

Defendant, the woman, and Logan "partied" in the room. Defendant testified "it was [Logan's] room for me to bring somebody over . . . I got, you know . . . maybe $20, and I buy the beer and stuff." He further testified that he "wasn't staying there, living there." The hotel room was reserved under Logan's name from 3 October 2021 until 13 October 2021.

The following day, 13 October 2021, Defendant testified he returned to the hotel room to retrieve the shoebox for his tennis shoes. Defendant did not have a key to the room and asked the hotel's housekeeper to let him into the room. The housekeeper obtained permission from the hotel's manager and opened the door to allow Defendant to enter the room. Defendant retrieved his shoebox from the room and left the hotel in his car.

Unbeknownst to Defendant, Forest City police officers were conducting surveillance on the hotel. They observed Defendant leave the room and drive away. The officers followed Defendant's vehicle and conducted a traffic stop. While the traffic stop and a search of Defendant's vehicle was underway, another officer obtained a search warrant for Room 208 at the Baymont Inn.

The officers informed Defendant he was not under arrest and transported him back to the Baymont Inn to be served with the search warrant. An officer obtained

the key card for the room from a hotel employee and opened the door to Room 208 prior to Defendant's arrival.

The search of the room uncovered a wallet on the nightstand which contained Defendant's identification, a debit or credit card with his name on it, and $481.00 in cash. No other person's identifying documents were discovered in the room. The officers discovered thirty-seven small yellow pills in a container, which they believed to contain fentanyl. They also found a digital scale. The room contained multiple pairs of men's shoes, containers from fast food restaurants, and a cord used to charge a cellphone.

Detective Radford testified Defendant told the officers he had been staying in the room "for a while." Defendant also told them on that day he had gone into the hotel room, smoked a cigarette and laid his wallet down. Detective Radford further testified Defendant "[m]ade a statement as to the pills that were found being from or for his girlfriend and they had gotten him [sic] from her baby daddy." Defendant testified at trial he believed officers had planted his wallet in the room because they had taken it from him at the traffic stop.

The pills were analyzed at the North Carolina State Crime Lab and determined to contain fentanyl. On 6 April 2023, the jury returned verdicts finding Defendant guilty of trafficking in opium or heroin, a Class F felony, and knowingly keeping or maintaining a dwelling for controlled substances, a Class 1 misdemeanor. The trial court sentenced Defendant to an active term of seventy to ninety-three months in

prison on the trafficking conviction and ninety days in prison on the misdemeanor charge to run concurrently. Defendant appeals only conviction for the misdemeanor keeping or maintaining a dwelling for controlled substances.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) (2025) and 15A-1444(a) (2025).

## III. Keeping a Dwelling for Controlled Substances

Defendant argues the trial court erred by denying his motion to dismiss the charge of keeping a dwelling for a controlled substance. We agree.

## A. Standard of Review

"The standard of review of a motion to dismiss for insufficient evidence is whether the State presented substantial evidence of each element of the offense and 'defendant's being the perpetrator.'" *State v. Hernandez*, 188 N.C. App. 193, 196, 655 S.E.2d 426, 429 (2008) (quoting *State v. Nettles*, 170 N.C. App. 100, 102-03, 612 S.E.2d 172, 174 (2005)). "Evidence is substantial if it is relevant and is sufficient to persuade a rational juror to accept a particular conclusion." *State v. Goblet*, 173 N.C. App. 112, 118, 618 S.E.2d 257, 262 (2005).

"[W]e must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (citing *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992)). "Once the court decides that a reasonable inference of defendant's guilt

may be drawn from the circumstances, then 'it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.'" *Id.* at 75-76, 430 S.E.2d at 919 (alteration in original) (emphasis omitted) (quoting *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978)).

## B. Analysis

### 1. N.C. Gen. Stat. § 90-108(a)(7)

N.C. Gen. Stat. § 90-108(a)(7) provides it shall be unlawful for any person

> [t]o knowingly *keep* or maintain any store, shop, warehouse, *dwelling house*, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same in violation of this Article.

N.C. Gen. Stat. § 90-108(a)(7) (2025) (emphasis supplied). The offense is a Class 1 misdemeanor N.C. Gen. Stat. § 90-108(b)(1) (2025). It is elevated to a Class I felony if the offender acts with the intent to impede the entry of law enforcement officers. *Id.*

The trial court considered Defendant's motion to dismiss the charge and analyzed the distinction between "keep" or "maintain" under the statute. The trial court stated:

> There was information that he was the only one – that came out, there was no other individuals in it. It showed personal possessions, including money and wallet in the

room. So as a result, there is evidence that he was keeping that room and stayed there . . . [T]he jury instructions say it doesn't matter whether he owned it as long as he's keeping it. I agree there is no evidence he maintained. It's either keeping or maintained. So I think it's the keeping.

"The determination of whether a building or other place is used for keeping or selling a controlled substance 'will depend on the totality of the circumstances.'" *State v. Frazier*, 142 N.C. App. 361, 366, 542 S.E.2d 682, 686 (2001) (quoting *State v. Mitchell*, 336 N.C. 22, 34, 442 S.E.2d 24, 30 (1994)). Our Court has set forth several factors to determine whether a person "keeps or maintains" a place within the meaning of N.C. Gen. Stat. § 90-108(a)(7), none of which are dispositive. *State v. Frazier*, 142 N.C. App. at 365, 542 S.E.2d at 686.

Those factors include: "occupancy of the property; payment of rent; possession over a duration of time; possession of a key used to enter or exit the property; and payment of utility or repair expenses." *Id*. A "pivotal" question under this statute "is whether there is evidence that defendant owned, leased, maintained, or was otherwise responsible for the premises." *State v. Boyd*, 177 N.C. App. 165, 174, 628 S.E.2d 796, 804 (2006). Other factors our Court has considered include: the presence of a large amount of cash on the premises, the defendant's admission to selling controlled substances, and the existence of drug paraphernalia. *Id.*

The trial court determined the State presented insufficient evidence tending to show Defendant "maintained" a dwelling for controlled substances, but it had produced sufficient evidence he had "kept" such dwelling under the statute for the

charge to be submitted to the jury. The factors set forth in *Frazier* apply to both "maintaining" and "keeping" a dwelling under N.C. Gen. Stat. § 90-108(a)(7). *Id.*

Applying all these factors to this case, the evidence, in the light most favorable to the State, tends to show the room had been reserved and paid for by Logan for over a week. Logan permitted Defendant to occupy the room with a female guest and to "party" with him there. Defendant was not registered and did not possess a key to the room. Law enforcement officers observed Defendant leave the room on only one occasion. One of the officers testified Defendant stated he had been staying in the room for "a while," but no follow up testimony was elicited regarding how long "a while" was.

Defendant's wallet in the room was the only evidence for which the State established Defendant's purported ownership. The cash was found inside of the wallet and not hidden in the room. One item of drug paraphernalia, a digital scale, and the thirty-seven pills were found in the room, for which Defendant was convicted of possessing.

## 2. *State v. Toney*

We are persuaded by several precedents. In *State v. Toney*, 187 N.C. App. 465, 467, 653 S.E.2d 187, 189 (2007), police officers discovered the defendant's wife lying on the ground outside of a hotel room. She told them she was staying in the hotel room with her husband, they had been using drugs in the room the night before, and there might still be drugs present in the room. *Id.* Inside the room, officers saw

digital scales and plastic baggies, items typically used to package narcotics for distribution. *Id.* The defendant's wife gave officers permission to search the room, and they found several pills, a small amount of marijuana in the bed sheets, and a duffel bag containing both men's and women's clothing. *Id.* at 467-68, 653 S.E.2d at 189. The officers searched the defendant's car and found three to four pounds of marijuana. *Id.* at 468, 653 S.E.2d at 189.

This Court reversed the defendant's conviction for the misdemeanor charge of knowingly maintaining a place for the purpose of keeping or selling controlled substances. *Id.* at 471, 653 S.E.2d at 191. The Court stated: "The State's evidence shows [the] defendant occupied the room one night and was present during the search. There is no evidence that he paid for the room or was even a registered guest in the room. It would be mere speculation [the] defendant, as opposed to his wife, maintained or kept the room." *Id.*

The Court in *Toney* relied heavily upon the fact the defendant had not paid for the hotel room. *Id.* at 471-72, 653 S.E.2d at 192. Here, the unrefuted evidence showed the room was registered to and paid for by Logan. Evidence of a defendant's financial responsibility for the hotel room is not dispositive on the issue of whether he "kept" or "maintained" the room. However, when the unrefuted evidence shows Defendant was not financially responsible for the room or have direct access, the statute is not satisfied when the evidence limits his physical presence in the room to "partying" there the night before, returning to retrieve a shoebox from the room the

following day, and not possessing a key to the room. Although one of the officers testified he stayed in the room "a while," no follow up questions were asked. "A while" could refer to any length of time, even Defendant's presence in the room the night before.

The Court in *Toney* based its holding on our decision in *State v. Kraus*, 147 N.C. App. 766, 557 S.E.2d 144 (2001). In that case, police officers obtained consent from the registered guest of a hotel room to search the room and found drugs and drug paraphernalia inside the room. *Id.* at 767, 557 S.E.2d at 146. The State's evidence tended to show the defendant had access to a key and spent the previous night in the hotel room, but no evidence was presented the defendant "rent[ed] the room or otherwise finance[d] its upkeep." *Id.* at 769, 557 S.E.2d at 147. This Court held the State had presented insufficient evidence that the defendant "maintained" the hotel room to uphold a conviction under N.C. Gen. Stat. § 90-108(a)(7). *Id.*

### 3. *State v. Harris*

In *State v. Harris,* 157 N.C. App. 647, 580 S.E.2d 63 (2003), this Court also cited *Kraus* in holding the evidence insufficient to convict the defendant under N.C. Gen. Stat. § 90-108(a)(7). In that case, the State presented evidence the defendant was seen at the house several times over a period of two months, an officer had spoken to the defendant at the house twice during that time, and some of the defendant's personal property was found in one of the bedrooms. *Id.* at 652, 580 S.E.2d at 66. This Court held: "At most, this evidence supports a finding [the] defendant occupied

the property from time to time although none of [the] defendant's personal papers

listed the duplex as [the] defendant's address.  The State offered no evidence [the]

defendant owned the property, bore any expense of renting or maintaining the

property, or took any other responsibility for the property."  *Id.* at 653, 580 S.E.2d at

66-67.  *See also State v. Bowens*, 140 N.C. App. 217, 222, 535 S.E.2d 870, 873*, disc.

review denied*, ___ N.C.___, ___ S.E. 2d ___. (holding insufficient evidence was

presented of "keeping or maintaining" when "there [was] no evidence [the]

[d]efendant was the owner or the lessee of the dwelling, or that he had any

responsibility for the payment of the utilities or the general upkeep of the dwelling").

### 4. *State v. Rogers*

Because the trial court distinguished "maintain" from "keep" as it applied to

the evidence in this case, we specifically address the meaning of "keep" under the

statute.  In *State v. Rogers,* our Supreme Court specifically addressed this language:

> The meaning of the term 'keep,' as it is used in referring to
> a person who 'keep[s]' a vehicle, building, or other place, is
> clear from the context in which it appears.  When you 'keep'
> a 'shop,' for instance – that is, when you are a shopkeeper
> – you have possession of the shop for a designated purpose
> or use (usually to sell goods).  You generally will have
> possessed that shop for at least a short period of time, but
> in some instances, you may be said to be "keep[ing]" a shop
> even when you have just opened it, if the circumstances
> indicate that you intend to retain the shop for continued
> use in the future.  *Cf.  The New Oxford American
> Dictionary* 952 (3d ed. 2010) (defining 'keep' as 'have or
> retain possession of' or 'retain or reserve for use in the
> future').  This possession must have occurred for at least a
> short period of time, or the circumstances must indicate an

intent to retain that property in the future (and in many cases, both may be evident). Thus, the word 'keep,' in the 'keep or maintain' language of subsection 90-108(a)(7), refers to possessing something for at least a short period of time – or intending to retain possession of something in the future – for a certain use.

371 N.C. 397, 402, 817 S.E.2d 150, 154 (2018).

In *Rogers*, the defendant was found to be storing crack cocaine inside the gas-cap compartment of a Cadillac automobile. Evidence was presented tending to show the defendant had possessed the car for at least two months. Our Supreme Court held the State presented sufficient evidence the defendant "kept" the Cadillac under the meaning of N.C. Gen. Stat. § 90-108(a)(7). *Id.* at 403, 817 S.E.2d at 154-55.

The Court's holding in *Rogers* relies upon the defendant's *possession* of the Cadillac. *Id.* at 402-03, 817 S.E.2d at 154. The distinction between this case and *Rogers* is that the State presented no evidence that Defendant "possessed" or exercised dominion or control over the hotel room. He was permitted to "party" there with a female acquaintance by the occupant but did not have a key to the room or any financial responsibility for it.

**5. State v. Frazier**

The State argues the facts of *Frazier* are more applicable to this case. In *Frazier*, the State presented evidence the defendant had lived in the hotel room where the drugs were found for six or seven weeks, "sometimes" paid rent for the room, and was present in the room during daytime hours. *Frazier,* 142 N.C App. at 365-66, 542

S.E.2d at 686.  This Court held this evidence was sufficient to prove the defendant "kept or maintained" the hotel room.  *Id*. at 366, 542 S.E.2d at 686.

We find the facts of this case more akin to those facts before us in *Toney, Kraus, Harris,* and *Bowens*.  Under those precedents, the evidence was insufficient to support Defendant's conviction under N.C. Gen. Stat. § 90-108(a)(7).  The trial court relied upon Defendant's presence in the room and the discovery of his wallet and cash on the nightstand to submit the charge to the jury.  These precedents require us to hold this evidence was not sufficient to support the conviction.  The trial court erred by denying Defendant's motion to dismiss the charge of keeping a dwelling for the sale or use of controlled substances.

**IV. Conclusion**

The State did not present substantial evidence to support Defendant's conviction of knowingly keeping or maintaining a place for using, keeping, or selling controlled substances under N.C. Gen. Stat. § 90-108(a)(7) (2025).  Judgment on this conviction was entered separately from and ordered to run concurrently with the felony trafficking conviction.  It is unnecessary to remand this matter to the trial court for resentencing.  We reverse the conviction, and vacate the judgment entered thereon.  *It is so ordered.*

REVERSED.

Judges ZACHARY and HAMPSON concur.