IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-761

Filed: 2 June 2020

Forsyth County, Nos. 17CRS061457-59

STATE OF NORTH CAROLINA

v.

JASON EDWARD WELDY

Appeal by Defendant from judgments entered 12 February 2019 by Judge R. Stuart Albright in Forsyth County Superior Court. Heard in the Court of Appeals 1 April 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Creecy C. Johnson, for the State-Appellee.*

*Sarah Holladay for Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals from judgments entered upon jury verdicts of guilty of, among other crimes, keeping or maintaining a vehicle for the keeping or sale of controlled substances ("keeping a vehicle"). Defendant argues that the trial court erred by denying his motion to dismiss for insufficient evidence the charge of keeping a vehicle. As there was insufficient evidence that Defendant kept or maintained a vehicle or that he did so for the keeping or selling of controlled substances, the trial court erred in denying Defendant's motion to dismiss that charge. We, therefore,

reverse the denial of Defendant's motion to dismiss, vacate Defendant's conviction for keeping a vehicle, and remand for resentencing.

## I. Background

On 16 July 2018, a grand jury indicted Defendant Jason Edward Weldy on charges of trafficking in methamphetamine by transportation, trafficking in methamphetamine by possession, possession with the intent to sell or distribute methamphetamine, trafficking in heroin by transportation, trafficking in heroin by possession, possession with the intent to sell or distribute heroin, and keeping or maintaining a vehicle for the keeping or sale of controlled substances. The State subsequently dismissed the charge of trafficking in methamphetamine by possession because a typographical error rendered the indictment fatally flawed.

On 11 February 2019, Defendant's case came on for jury trial. The evidence at trial tended to show the following: In November 2017, narcotics investigators with the Forsyth County Sheriff's Office received information from the Stokes County Narcotics Office that Defendant was selling illegal drugs in Forsyth County. On 30 November 2017, Forsyth County narcotics investigators surveilled Defendant as he drove a Nissan Maxima around town. The investigators followed Defendant in unmarked law enforcement vehicles and observed Defendant driving the car alone. Investigator A.R. Joyner testified that Defendant "would take random turns. . . . I observed him just turning back onto the road he was on and going back in the

direction he came, which is a countersurveillance technique that I know . . . those involved in illegal activities do."

After following Defendant for about 20-25 minutes, Joyner saw Defendant park at the Quality Inn. Defendant went inside, stayed a few minutes, and came back out. As Defendant drove away from the hotel, officers pulled Defendant over for driving without a license. Joyner frisked Defendant to check for weapons, finding none. Joyner saw a bulge between Defendant's belt and his hip bone. When Joyner touched the bulge, she believed it to be methamphetamine. Another officer retrieved the bulge and Joyner saw it was a clear, plastic bag containing a "white, clear-ish, hard crystal-like" substance. The substance was later determined to be 56.38 grams of methamphetamine, an amount Joyner testified was not consistent with personal use. An officer retrieved another plastic bag containing an off-white, powdery substance from Defendant's pocket. The substance was later determined to be 6.84 grams of heroin, an amount Joyner testified was not a typical "user amount" but was instead consistent with "be[ing] for sale." Joyner testified that Defendant's wife and mother-in-law were the registered owners of the car.

On 12 February 2019, the jury found Defendant guilty of all charges. The trial court sentenced Defendant to a total of 210-279 months' imprisonment and assessed $150,000 in fines. Following entry of judgment, Defendant gave oral notice of appeal in open court.

## II. Discussion

Defendant argues that the trial court erred by denying his motion to dismiss the charge of keeping a vehicle because the State presented insufficient evidence that Defendant kept or maintained a vehicle or that he did so for the purpose of keeping or selling illegal drugs.

In ruling on a motion to dismiss, "the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015) (internal quotation marks and citation omitted). The evidence must be viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (citation omitted). "[W]hen the evidence only raises a suspicion of guilt, a motion to dismiss must be granted." *State v. Foye*, 220 N.C. App. 37, 41, 725 S.E.2d 73, 77 (2012) (citation omitted). However, "[i]f there is more than a scintilla of competent evidence to support allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." *State v. Everhardt*, 96 N.C. App. 1, 11, 384 S.E.2d 562, 568 (1989) (internal quotation marks and citation omitted), *aff'd*, 326 N.C. 777, 392 S.E.2d 391 (1990). This Court reviews a trial court's

denial of a motion to dismiss de novo. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

Defendant was convicted of keeping or maintaining a vehicle which is used for the keeping or selling of a controlled substance, in violation of N.C. Gen. Stat. § 90-108(a)(7). That provision states, in pertinent part, that "[i]t shall be unlawful for any person . . . [t]o knowingly keep or maintain any . . . vehicle . . . which is used for the keeping or selling of [controlled substances] in violation of this Article." N.C. Gen. Stat. § 90-108(a)(7) (2019).

### A. Keep or maintain a vehicle

"[T]he word 'keep,' in the 'keep or maintain' language of subsection 90-108(a)(7), refers to possessing something for at least a short period of time—or intending to retain possession of something in the future—for a certain use." *State v. Rogers*, 371 N.C. 397, 402, 817 S.E.2d 150, 154 (2018).[1] The word "maintain" as it is used to refer to a person who "keep[s] or maintain[s]" a vehicle or dwelling within

---

[1] While the Supreme Court in *Rogers* "reject[ed] any notion" expressed in *State v. Mitchell*, 336 N.C. 22, 442 S.E.2d 24 (1994), that the "keeping or selling" element required the drugs to be stored "for a certain minimum period of time[,]" *Rogers*, 371 N.C. at 406, 817 S.E.2d at 157, this rejection is inapplicable to the "keep or maintain" element. Indeed, the Court in *Rogers* explained,

> Ordinarily, words used in one place in [a] statute have the same meaning in every other place in the statute. But there are exceptions to that rule, and this is one. By making it a crime to "keep" a car "which is used for the keeping" of controlled substances, subsection 90-108(a)(7 uses the word "keep" and its variant "keeping" to mean different things. We have already noted that in the first instance, the word "keep" refers to possessing something for at least a short period of time, or to possessing something currently and intending to retain possession of it in the future, for some designated purpose or use.

*Id.* at 403, 817 S.E.2d at 155 (certain internal quotation marks and citations omitted).

the meaning of subsection 90-108(a)(7) means "to bear the expense of; carry on . . . hold or keep in an existing state or condition." *State v. Moore*, 188 N.C. App. 416, 423, 656 S.E.2d 287, 292 (2008) (omission in original) (internal quotation marks and citation omitted).

Although our courts have defined the words "keep" and "maintain" separately, they do not describe separate offenses, but are similar terms, often used interchangeably, to establish a singular element of the offense. Whether a vehicle is "kept or maintained" for the keeping or selling of controlled substances depends on the totality of the circumstances. *State v. Hudson*, 206 N.C. App. 482, 492, 696 S.E.2d 577, 584 (2010) (citing *State v. Bowens*, 140 N.C. App. 217, 221, 535 S.E.2d 870, 873 (2000)). Circumstances courts have considered in determining whether a defendant "kept or maintained" a vehicle within the meaning of N.C. Gen. Stat. § 90-108(a)(7) include defendant's use of the vehicle, title to or ownership of the vehicle, property interest in the vehicle, payment toward the purchase of the vehicle, and payment for repairs to or maintenance of the vehicle. *See Rogers*, 371 N.C. at 402, 817 S.E.2d at 154 (sufficient evidence that defendant kept a vehicle where officers observed defendant driving the vehicle for approximately 90 minutes, defendant was the only person driving the car, and a "service receipt [was] found inside the Cadillac bearing defendant's name—a receipt that bore a date from about two and a half months before defendant's arrest"); *State v. Alvarez*, 260 N.C. App. 571, 575, 818 S.E.2d 178, 182

(2018), *aff'd per curiam,* 372 N.C. 303, 828 S.E.2d 154 (2019) (sufficient evidence that "defendant knowingly kept or maintained the truck for the purpose of keeping or selling cocaine [where a]lthough the vehicle was registered in his wife's name, defendant described it as '[his] truck[;]' [d]efendant admitted that it was his work vehicle, that no other party used it, and that he built the wooden drawers and compartments located in the back of the cab"); *Hudson*, 206 N.C. App. at 492, 696 S.E.2d at 584 (sufficient evidence that defendant kept or maintained a vehicle where the "bill of lading for the Mercedes . . . shows that Defendant picked up the vehicle . . . [and] maintained possession as the authorized bailee of the vehicle continuously and without variation for two days[,] . . . [h]aving stopped to rest overnight on at least one occasion during that time period"). Although occupancy of the vehicle is a relevant circumstance, occupancy alone will not support the element of keeping or maintaining. *See State v. Spencer*, 192 N.C. App. 143, 148, 664 S.E.2d 601, 605 (2008) ("[O]ccupancy, without more, will not support the element of 'maintaining' a dwelling.").

In this case, the evidence before the trial court that Defendant "kept or maintained" the car is as follows: Officers observed Defendant drive the car for about 20-25 minutes. He then stopped at a hotel, went inside for a few minutes, came back out, and had started to drive away when he was pulled over. Defendant's wife and mother-in-law were the registered owners of the car.

The State presented no evidence that Defendant had title to or owned the vehicle, had a property interest in the vehicle, paid toward the purchase of the vehicle, or paid for repairs to or maintenance of the vehicle. Thus, the State presented no evidence that Defendant "maintained" the car. *See Moore*, 188 N.C. App. at 423, 656 S.E.2d at 292; *Hudson*, 206 N.C. App. at 492, 696 S.E.2d at 584.

The question then becomes whether Defendant's use of the car was sufficient evidence that he "kept" the car, within the meaning of the statute. The State argues that because Defendant possessed the vehicle for 20-25 minutes and "used it as an integral part of his drug trafficking operation," Defendant kept the vehicle as in *Rogers*.

In *Rogers*, our Supreme Court analyzed the meaning of the word "keep" as it is used to refer to a person who "keep[s] or maintain[s]" a vehicle within the meaning of subsection 90-108(a)(7). *Rogers*, 371 N.C. at 403, 817 S.E.2d at 155. The Court explained,

> [w]hen you "keep" a "shop," for instance—that is, when you are a shopkeeper—you have possession of the shop for a designated purpose or use (usually to sell goods). You generally will have possessed that shop for at least a short period of time, but in some instances, you may be said to be "keep[ing]" a shop even when you have just opened it, if the circumstances indicate that you intend to retain the shop for continued use in the future. *Cf. The New Oxford American Dictionary* 952 (3d ed. 2010) (defining "keep" as "have or retain possession of" or "retain or reserve for use in the future"). This possession must have occurred for at least a short period of time, or the circumstances must

- 8 -

indicate an intent to retain that property in the future (and in many cases, both may be evident).

*Id.* at 402, 817 S.E.2d at 154. The Court summarized as follows: "Thus, the word 'keep,' in the 'keep or maintain' language of subsection 90-108(a)(7), refers to possessing something for at least a short period of time—or intending to retain possession of something in the future—for a certain use." *Id.*

In *Rogers*, officers observed defendant driving a Cadillac for approximately 90 minutes, and the State introduced at trial "an additional, very important piece of evidence: the service receipt found inside the Cadillac bearing defendant's name—a receipt that bore a date from about two and a half months before defendant's arrest." *Id.* From this evidence, "a reasonable jury could conclude that defendant had possessed the car for about two and a half months, at the very least." *Id.* at 402-03, 817 S.E.2d at 154. "The State therefore presented sufficient evidence that defendant 'ke[pt]' the Cadillac." *Id.* at 403, 817 S.E.2d at 154-55.

The Court explained in a footnote, however, that while "[p]ossessing a car for two and a half months is sufficient to show that an individual 'ke[pt]' a car under subsection 90-108(a)(7)[,] . . . we do not mean to imply that possession for that long is necessary to satisfy that element." *Id.* at 403 n.2, 817 S.E.2d at 154 n.2. However, the Court "need[ed] not, and d[id] not, take any position on" whether "'[k]eep[ing]' a car for a much shorter period of time may suffice[.]" *Id.* The Court further explained, "of course, as we have already suggested, the State may also be able to prove that a

defendant has 'ke[pt]' a car by proving that the defendant possessed a car, and that he intended to continue possessing it in the future, when he was arrested." *Id.*

The facts in this case are readily distinguishable from the facts in *Rogers*. First, unlike in *Rogers* where the State presented a service receipt found inside the Cadillac bearing defendant's name, the State in this case presented no evidence linking Defendant directly to the car or showing Defendant had paid to service the car. Moreover, Defendant's possession of the car for 20-25 minutes is a considerably shorter period of time than the two and a half months that defendant possessed the car in *Rogers*. The 20-25-minute period is also a considerably shorter period of time than the two days defendant possessed the Mercedes in *Hudson*. *Hudson*, 206 N.C. App. at 492, 696 S.E.2d at 584.[2] Moreover, the State failed to offer any evidence "that [D]efendant . . . intended to continue possessing it in the future, when he was arrested." *Rogers*, 371 N.C. at 402, 817 S.E.2d at 154. Accordingly, the State failed to present sufficient evidence that Defendant "kept" the car.

Under the totality of the circumstances, Defendant's possession of the car for approximately 20-25 minutes, standing alone, was insufficient evidence that Defendant "kept or maintained" the car. As the State failed to present sufficient

---

[2] Under prior case law and *Rogers'* analysis of the word "keep," Defendant's possession of the car was more akin to a shopkeeper having "just opened" a shop than to a shopkeeper who has "possessed that shop for at least a short period of time[.]" *Rogers*, 371 N.C. at 402, 817 S.E.2d at 154.

evidence that Defendant "kept or maintained" the car, the trial court erred by denying Defendant's motion to dismiss.

## B. Keeping or selling controlled substances

Even if, however, the State had presented sufficient evidence that Defendant "kept or maintained" a car, there was insufficient evidence that he did so for the purpose of "keeping or selling" controlled substances.

"[T]he keeping . . . of" drugs referred to in N.C. Gen. Stat. § 90-108(a)(7) means "the storing of drugs." *Id.* at 405, 817 S.E.2d at 155. However, subsection 90-108(a)(7) does not require that a car be used "to store drugs for a certain minimum period of time—or that evidence of drugs must be found in the vehicle, building, or other place on more than one occasion—for a defendant to have violated subsection 90-108(a)(7)." *Id.* at 406, 817 S.E.2d at 156-57 (rejecting the reasoning in *Mitchell* that "the keeping . . . of [drugs]" means "not just possession, but possession that occurs over a duration of time[,]" *Mitchell*, 336 N.C. at 32, 442 S.E.2d at 30). Nonetheless, subsection 90-108(a)(7) "does not create a separate crime simply because the controlled substance was temporarily in a vehicle." *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156 (internal quotation marks and citation omitted). "In other words, merely possessing or transporting drugs inside a car—because, for instance, they are in an occupant's pocket or they are being taken from one place to another—is not enough to justify a conviction under the 'keeping' element of subsection 90-108(a)(7)."

*Id.* "Rather, courts must determine whether the defendant was using a car for the *keeping* of drugs—which, again, means the *storing* of drugs—and courts must focus their inquiry on the *use*, not the contents, of the vehicle." *Id.* (internal quotation marks and citation omitted). The meaning of a vehicle which is used for "selling" controlled substances is self-evident. *Mitchell*, 336 N.C. at 33, 442 S.E.2d at 30. The determination of whether a vehicle is used for keeping or selling controlled substances will depend on the totality of the circumstances. *Rogers*, 371 N.C. at 406, 817 S.E.2d at 157 (citation omitted). As restated in *Rogers*, in addition to evidence of controlled substances found, "the State must produce other incriminating evidence of the 'totality of the circumstances' and more than just evidence of a single sale of illegal drugs or 'merely having drugs in a car (or other place)' to support a conviction under this charge." *State v. Miller*, 826 S.E.2d 562, 566-67 (N.C. Ct. App. 2018) (quoting *Rogers*, 371 N.C. at 404, 817 S.E.2d at 156).

Circumstances our courts have considered relevant to this determination include: the presence of controlled substances in the car; the packaging of the controlled substances; the amount of controlled substances found in the car; the presence of drug paraphernalia in the car; the presence of large amounts of cash in the car; and whether the controlled substances were hidden in the car. *See, e.g., Rogers*, 371 N.C. at 403, 817 S.E.2d at 155; *Mitchell*, 336 N.C. at 33, 442 S.E.2d at 30; *Alvarez*, 260 N.C. App at 575, 818 S.E.2d at 182; *State v. Dunston*, 256 N.C. App. 103,

106, 806 S.E.2d 697, 699 (2017); *State v. Frazier*, 142 N.C. App. 361, 366, 542 S.E.2d 682, 687 (2001).

In *Rogers*, the State presented sufficient evidence that defendant kept a car to keep illegal drugs where law enforcement officers found two purple plastic baggies containing cocaine in a small space behind the door covering the vehicle's gas cap; a marijuana cigarette and $243 hidden in a boot in the vehicle's passenger compartment; and similar purple plastic baggies containing larger amounts of cocaine, a digital scale, and small zip-lock bags in defendant's hotel room. *Rogers*, 371 N.C. at 403, 817 S.E.2d at 155.

In *Alvarez*, the State presented sufficient evidence that defendant used a car to keep or sell illegal drugs where officers discovered one kilogram of cocaine wrapped in plastic and oil to evade detection by canine units in a false-bottomed compartment on defendant's truck bed floor, defendant was aware that cocaine was hidden in his truck and willingly participated in a drug transaction in the Walmart parking lot, and defendant held himself out as responsible for the ongoing distribution of drugs like those discovered in the truck. *Alvarez*, 260 N.C. App. at 575-76, 818 S.E.2d at 182.

Similarly, in *Dunston*, the State presented sufficient evidence that defendant used a car for the keeping or selling of illegal drugs where defendant was in the car at a location known to law enforcement for a high level of illicit drug activity and was

observed by law enforcement unwrapping cigars and re-rolling them after manipulating them, actions consistent with distributing marijuana. *Dunston*, 256 N.C. App. at 106, 806 S.E.2d at 699. While in the parking lot, the driver of the vehicle was observed in a hand-to-hand exchange of cash with another individual. *Id.* When later searched by officers, the driver was discovered to have marijuana, and defendant no longer possessed the "cigars[.]" *Id.* Upon searching the car, officers discovered a travel bag containing a 19.29-gram mixture of heroin, codeine, and morphine; plastic baggies; two sets of digital scales; and three cell phones. *Id.*

The State's uncontroverted evidence in this case shows that the drugs seized from Defendant were found in his waistband and pants pocket. While this evidence would support a conviction for possession of those drugs, "subsection 90-108(a)(7) does not 'create a separate crime simply because the controlled substance was temporarily in a vehicle.'" *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156 (quoting *Mitchell*, 336 N.C. at 33, 442 S.E.2d at 30). While Defendant's possession of the drugs was consistent with "drug use, or with the sale of drugs generally, [it] do[es] not implicate the *car* with the sale of drugs." *Mitchell*, 336 N.C. at 33, 442 S.E.2d at 30 (emphasis added).

As "merely possessing or transporting drugs inside a car—because, for instance, they are in an occupant's pocket or they are being taken from one place to another—is not enough to justify a conviction under the 'keeping' element of

subsection 90-108(a)(7)[,]" *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156 (citation omitted), and the State presented no evidence that the car was used for the purpose of keeping or selling drugs—no cash; no scales, baggies, or other drug paraphernalia; no cell phones; no modifications made to the car for the concealment of drugs; and no drugs in the car itself, hidden or otherwise—the State's evidence in this case is insufficient to support a conclusion that Defendant kept or maintained the vehicle for the keeping or selling of controlled substances. *See Miller*, 826 S.E.2d at 567 (insufficient evidence that defendant maintained a dwelling for keeping or selling controlled substances where "the State offered no evidence showing any drugs or drug paraphernalia, scales, residue, baggies, large amounts of cash, weapons, or other implements of the drug trade, were observed or seized from Defendant's home [and t]he State offered no evidence of any other drug sales taking place at Defendant's home, beyond the sale at issue").

The State argues that there was evidence of a "ledger of drug transactions in the vehicle" and that this evidence was sufficient evidence that Defendant kept the car for the "selling" of controlled substances. The State mischaracterizes the nature of the evidence offered at trial.

On cross-examination, Joyner testified, "There was a ledger found in the vehicle. I don't recall the contents of the ledger, but there were multiple entries in the ledger." She clarified that it was "[p]aper with written amounts and what the

amounts were for." On redirect examination, Joyner stated that it was a "composition book, notebook paper, and it had dates and amounts. I would say it was like a glorified, almost like a checkbook, a ledger, a journal."

Joyner admitted that she had not seen the notebook produced in court and the record shows the notebook was not introduced into evidence. Moreover, there was no testimony that the dates and amounts in the notebook were related to drug transactions (or anything else, for that matter) and no testimony linking the notebook to Defendant. Joyner's testimony regarding a notebook containing unspecified dates and entries was not evidence of a circumstance that could be considered in determining whether Defendant kept the car to keep or sell controlled substances.

Viewed in the light most favorable to the State, the evidence shows that when Defendant was pulled over for driving without a license, a single bag containing 56.39 grams of methamphetamine was found in his waistband and a single bag containing 6.84 grams of heroin was found in his pocket. Defendant was tried for and convicted of trafficking in methamphetamine by transportation, possession with the intent to sell or distribute methamphetamine, trafficking in heroin by transportation, trafficking in heroin by possession, and possession with the intent to sell or distribute heroin; Defendant has not appealed those convictions. However, under a totality of the circumstances, the State's evidence in this case was insufficient evidence that

Defendant kept or maintained a vehicle for the "keeping or selling" of controlled substances.

## III.  Conclusion

As there was insufficient evidence that Defendant "kept or maintained" the car or that he did so for the purpose of "keeping or selling controlled substances," N.C. Gen. Stat. § 90-108(a)(7), the trial court erred by denying Defendant's motion to dismiss this charge.  We, therefore, reverse the trial court's denial of this motion and vacate Defendant's conviction for keeping or maintaining a vehicle for keeping or selling controlled substances.  Because the trial court consolidated Defendant's conviction for keeping a vehicle with his conviction for trafficking in heroin by possession for sentencing purposes, we must remand for resentencing as to the trafficking in heroin by possession conviction.  *See State v. Fuller*, 196 N.C. App. 412, 426, 674 S.E.2d 824, 833 (2009) ("Because the trial court consolidated that conviction with defendant's PWISD conviction into a single judgment for sentencing purposes, we must remand for resentencing as to the PWISD conviction.").

REVERSED AND REMANDED.

Judge YOUNG concurs.

Judge BERGER dissents by separate opinion.

BERGER, Judge, dissenting in separate opinion.

Because the State presented substantial evidence that Defendant knowingly kept a vehicle which was used for the selling of controlled substances, I respectfully dissent.

Although the crime for which Defendant was charged is typically referred to in practice as "maintaining a vehicle," there is more to it than that. A defendant may be found guilty of violating Section 90-108(a)(7) if the State proves the defendant: (1) knowingly, (2) keeps *or* maintains, (3) a vehicle,[3] (4) which was used for the keeping *or* selling, (5) of controlled substances. N.C. Gen. Stat. § 90-108(a)(7) (2019); *State v. Rogers*, 371 N.C. 397, 401, 817 S.E.2d 150, 153 (2018).

The majority neglects the use of the word "or" in the statute. This reading of the statute limits the scope of the activity proscribed by the legislature, and effectively rewrites the statute to allow conviction only for defendants who knowingly maintain a vehicle which is used for the keeping of controlled substances.

I. Keeps *or* Maintains

In *State v. Mitchell*, 336 N.C. 22, 442 S.E.2d 24 (1994), the North Carolina Supreme Court determined that " '[k]eep' . . . denotes not just possession, but possession that occurs over a duration of time." *Id.* at 32, 442 S.E.2d at 30. However, our Supreme Court in *Rogers*, expressly modified this language, holding "the word

---

[3] The statute also applies to dwellings, boats, aircraft, and other places that may be used to keep or sell controlled substances.

'keep,' in the 'keep or maintain' language of subsection 90-108(a)(7), refers to possessing something for at least a short period of time—or intending to retain possession of something in the future—for a certain use." *Rogers*, 371 N.C. at 402, 817 S.E.2d at 154. "To the extent that *Mitchell*'s 'duration of time' requirement conflicts with the text of subsection 90-108(a)(7) . . . this aspect of *Mitchell* is disavowed." *Id.* at 406, 817 S.E.2d at 157. "The totality of the circumstances controls, and whether there is sufficient evidence of the 'keeping or maintaining' element depends on several factors, none of which is dispositive." *State v. Hudson*, 206 N.C. App. 482, 492, 696 S.E.2d 577, 584 (2010). Thus, determination of this element is a fact-specific inquiry.

*Rogers* is similar to the present case. In *Rogers*, police officers conducted surveillance on a defendant for an hour and a half. They observed the defendant drive up to a hotel in a Cadillac, exit the hotel, and then drive off in the same vehicle. *Rogers*, 371 N.C. at 402, 817 S.E.2d at 154. The defendant was the only occupant of the vehicle, and he was the only individual officers observed using the vehicle during their surveillance. *Id.* at 402, 817 S.E.2d at 154. The Cadillac was not registered in the defendant's name; however, there was a service receipt in the vehicle dated two months prior to the arrest bearing the defendant's name. *Id.* at 399-400, 817 S.E.2d at 152-53. The Court determined that "defendant had possessed the car for about two and a half months, at the very least [and] . . .[t]he State therefore presented

sufficient evidence that defendant 'ke[pt]' the Cadillac." *Id.* at 402-03, 817 S.E.2d at 154-55.

> *Rogers* clarifies the Court's decision in Footnote 2:

>> Possessing a car for two and a half months is sufficient to show that an individual "ke[pt]" a car under subsection 90-108(a)(7). But we do not mean to imply that possession for that long is necessary to satisfy that element. "[K]eep[ing]" a car for a much shorter period of time may suffice—we need not, and do not, take any position on that to decide this case. And, of course, as we have already suggested, the State may also be able to prove that a defendant has "ke[pt]" a car by proving that the defendant possessed a car, and that he intended to continue possessing it in the future, when he was arrested.

*Id.* at 403 n.2, 817 S.E.2d at 154 n.2.

This makes sense. Prior decisions of this Court have focused solely on "maintaining" a vehicle through proof of service receipts, payment of taxes, and title ownership. However, this limited reading allows individuals to escape the accountability and ignores the reality of the drug trade.

Let's consider the example of a drug dealer who steals a car. He then uses the stolen vehicle to travel to a prearranged location to obtain drugs that he intends to distribute to other individuals for money. When he arrives at the predetermined location, he exits the stolen vehicle, enters the predetermined location, and exits the predetermined location a few minutes later. He gets back into the stolen vehicle with a trafficking amount of illegal drugs. The drug dealer in the example *kept* the stolen vehicle in that he possessed the vehicle to aid or further his drug trafficking

operation. What if he used the stolen vehicle to further his drug activity for weeks, months, or even years?

However, because the car was stolen, the drug dealer would not have title to the vehicle. In addition, it's unlikely he would have serviced the stolen vehicle, and it is also unlikely the drug dealer would have paid taxes on the stolen vehicle. Under the majority opinion, an individual who steals a vehicle and uses it to sell drugs could never be convicted under Section 90-108(a)(7). The same is true for the common practice of drug dealers using or borrowing vehicles in an effort to avoid detection.

Here, officers had Defendant under surveillance during a four- to five-hour operation. During surveillance, Defendant drove the vehicle in an evasive manner. One officer testified that he observed Defendant in the vehicle for 20-25 minutes prior to entering the Quality Inn. Defendant went inside the hotel for a few minutes, exited, and then drove away. When Defendant was pulled over, he was the only occupant observed in the vehicle. Upon searching Defendant, officers discovered 56.38 grams of methamphetamine and 6.84 grams of heroin. Officers testified that neither of these amounts were consistent with personal use. Rather, these were trafficking amounts consistent with selling.

The State presented substantial evidence, based on the totality of the circumstances, that Defendant "kept" the vehicle, and thus met this element under Section 90-108(a)(7) and *Rogers*.

II. <u>Keeping *or* Selling</u>

The prohibition in Section 90-108(a)(7) applies "only when [the vehicle] is used for 'keeping or selling' controlled substances." *Mitchell*, 336 N.C. at 32, 442 S.E.2d at 29. "The determination of whether a vehicle . . . is used for keeping or selling controlled substances will depend on the totality of the circumstances." *Id.* at 34, 442 S.E.2d at 30. "[C]ourts must determine whether the defendant was using a car for the *keeping* [or selling] of drugs—which, again, means the *storing* [or sale] of drugs—and courts must focus their inquiry 'on the *use*, not the contents, of the vehicle.' " *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156 (citations omitted). In addition, "evidence that a defendant has transported or possessed drugs inside a car may, in conjunction with additional evidence, be enough to satisfy the '*selling*' element of subsection 90-108(a)(7)." *Id.* at 405 n.4, 817 S.E.2d at 156 n.4.

The majority essentially finds that because Defendant merely possessed or transported the drugs, and there was no other evidence of drug activity, Defendant's motion should have been allowed. However, the totality of the circumstances demonstrates otherwise.

In denying Defendant's motion to dismiss, the trial court stated,

> [t]he Court also notes that an experienced detective testified that the sheer volume of the methamphetamine and heroin indicated they were seller amounts, not user amounts. . . . [T]he detective testified that the defendant had a ledger in his car, which indicated he was using the car both to transport, obviously large quantities of methamphetamine and heroin, but also had a ledger in the

car indicating they were his, at least in the light most favorable to the non-moving party, records of the client's transactions—of the defendant's transactions and/or customers . . . .

The majority correctly notes that the ledger found in the vehicle was never entered into evidence or authenticated. However, while the ledger was not entered into evidence by the State, defense counsel opened the door to testimony concerning the ledger, and its significance to a narcotics investigator with more than eighteen years of law enforcement experience, when, he asked Detective Joyner: "Other than your stating that in your training and experience that amount of drugs would not be a user amount, *was there anything else seized from that vehicle or from [Defendant] that would indicate he was selling any sort of illegal narcotic?*" (Emphasis added). Detective Joyner responded that a ledger was found in the vehicle that contained written amounts and what those amounts were for. The State followed up on redirect, and Detective Joyner described the ledger as a composition book, a "checkbook, a ledger, a journal" that contained dates and amounts.

Thus, there was some evidence of business transactions that, standing alone may be innocent behavior unrelated to Defendant's actions in trafficking and selling narcotics. However, this is evidence that may properly be considered under the totality of the circumstances. Moreover, this evidence is to be considered in the light most favorable to the State, with every inference therefrom to be considered in the State's favor. *See State v. Chekanow*, 370 N.C. 488, 492, 809 S.E.2d 546, 549-50

(2018) ("In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." (citation and quotation marks omitted)).

Further, the trial court may consider evidence that Defendant was involved in the illegal drug business to support an inference that the vehicle was used to sell drugs. *See Rogers*, 371 N.C. at 404, 817 S.E.2d at 155 (holding that "evidence suggesting that defendant was involved in selling drugs also permits us to draw a reasonable inference that defendant was using the [vehicle] to store cocaine.").

In considering whether Defendant was involved in the sale of illegal drugs, the trial court determined that

> in [the] light most favorable to the non-moving party . . . the tip from the Stokes County law-enforcement to the Forsyth County law enforcement, identified the defendant with specificity and that he was engaged . . . in the illegal drug trade or drug business, selling drugs in Forsyth County . . . . After they observed him by himself driving a car from one place to another, they conducted a traffic stop and found trafficking amounts of heroin and methamphetamine on the defendant. The defendant then made multiple—whether they're confessions or admissions, on the scene . . . that both confirmed the Stokes County law-enforcement officer's information, which is that the defendant was involved in the drug trade, the illegal drug business . . . . [W]hen those substances were taken from his person, instead of denying, certainly it appears he admitted he was involved in the drug trade.

Thus, in considering the totality of the circumstances, the State presented substantial evidence that Defendant used the vehicle to sell, or otherwise aid in the selling, of controlled substances. The State was not required to prove that Defendant stored or hid the trafficking amount of methamphetamine and heroin in the vehicle under the facts of this case.

To this point, the majority focuses on the absence of evidence of money, scales, etc. However,

> [t]he question here is not whether evidence that does not exist entitles Defendant to a favorable ruling on his motion to dismiss. That there may be evidence in a typical drug [case] that is non-existent in another case is not dispositive . . . . Instead, the question is whether the totality of the circumstances, based on the competent and incompetent evidence presented, when viewed in the light most favorable to the State, permits a reasonable inference that Defendant [used the vehicle for keeping or selling controlled substances].

*State v. Blagg*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2020).

Even if we assume that this case can be characterized as a close one, we have held that "[i]n borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *State v. Coley*, 257 N.C. App. 780, 789, 810 S.E.2d 359, 365 (2018). Thus, I would find that the trial court did not err.