TYSON, Judge.
 

 *517
 
 This case is before this Court on remand by Order of the North Carolina Supreme Court to be reconsidered in light of that Court's recent decision in
 
 State v. Rogers
 
 , --- N.C. ----,
 
 817 S.E.2d 150
 
 (2018).
 

 *563
 

 I. Factual and Procedural Background
 

 The facts underlying this case are set forth in detail in our Court's previous opinion,
 
 State v. Miller
 
 , --- N.C. App. ----,
 
 817 S.E.2d 503
 
 ,
 
 2018 WL 3734368
 
 (2018) (unpublished). They are recounted briefly below.
 

 The State's evidence showed Union County Sheriff's Sgt. Mark Thomas received a complaint asserting Defendant was "involved in
 
 *518
 
 sales and narcotics" and began an investigation. Sgt. Thomas hired a trusted confidential informant to attempt to purchase crack cocaine from Defendant. After Thomas contacted the informant, she told Sgt. Thomas she knew Defendant, but did not assert she had previously purchased drugs from him. Officers provided the informant with a recording device and $ 48.00 in cash. The informant went to Defendant's home and was allowed to enter into his living room. She had a conversation with Defendant and a female, who was also present inside the house. She gave Defendant $ 48.00 to purchase crack cocaine. Defendant left the room, walked outside and went towards an old school bus parked on his property. When Defendant returned, he provided the requested crack cocaine rocks to the informant, who then shared a portion of the rocks with the other female inside the house.
 

 Defendant was indicted for possession with intent to sell and deliver cocaine, sale of cocaine, and maintaining a place to keep controlled substances. The jury convicted Defendant on all three counts. Defendant appealed to this Court.
 

 Defendant's sole argument asserts that the trial court erred by denying his motion to dismiss the charge of maintaining a place to keep controlled substances. This Court unanimously agreed and reversed Defendant's conviction for that one count.
 
 Miller
 
 ,
 
 2018 WL 3734368
 
 at *2. The Supreme Court of North Carolina issued its 17 August 2018 opinion in
 
 Rogers
 
 , --- N.C. ----,
 
 817 S.E.2d 150
 
 . The Court also remanded this case for our reconsideration based upon the issue before the Court in
 
 Rogers
 
 , --- N.C. ----,
 
 817 S.E.2d 150
 
 .
 

 II. Analysis
 

 In deciding
 
 State v. Miller
 
 ("
 
 Miller I
 
 "), this Court relied in part upon
 
 State v. Mitchell
 
 ,
 
 336 N.C. 22
 
 ,
 
 442 S.E.2d 24
 
 (1994), to reach the conclusion that the State had failed to present sufficient evidence tending to show Defendant was maintaining a dwelling for the keeping of a controlled substance in violation of
 
 N.C. Gen. Stat. § 90-108
 
 (a)(7). In
 
 Rogers
 
 , our Supreme Court disavowed its earlier statement in
 
 Mitchell
 
 that "keep" denotes "not just possession, but possession that occurs over a duration of time."
 
 Rogers
 
 , --- N.C. at ----, 817 S.E.2d at 156. To determine
 
 Rogers'
 
 impact on Defendant's case, we initially review
 
 Mitchell
 
 .
 

 A.
 
 State v. Mitchell
 

 In
 
 Mitchell
 
 , the State's evidence was that a convenience store clerk had seen the defendant exit a car with darkly tinted windows. When the defendant approached the clerk's counter and asked for rolling papers,
 
 *519
 
 the clerk asked what was in his pockets. The defendant acknowledged it was marijuana and handed it to the clerk. The clerk called the police.
 
 Id
 
 . at 31,
 
 442 S.E.2d at 29
 
 .
 

 Our Supreme Court recognized the "fundamental issue" was whether the evidence produced by the State was enough to prove that the defendant's "vehicle was used for keeping or selling marijuana."
 
 Id
 
 . at 32,
 
 442 S.E.2d at 29
 
 . The State had shown that the defendant possessed two bags of marijuana while in his car, that his car contained a marijuana cigarette the following day, and that in a subsequent search of his home, police found two marijuana cigarettes, plastic baggies and scales.
 
 Id
 
 . at 33,
 
 442 S.E.2d at 30
 
 .
 

 The Court in
 
 Mitchell
 
 held "[t]hat an individual within a vehicle possesses marijuana on one occasion cannot establish that the vehicle is 'used for keeping' marijuana; nor can one marijuana cigarette found within the car establish that element. ... we do not believe that our legislature intended to create a separate crime simply because the controlled substance was temporarily in a vehicle."
 
 Id
 
 .
 

 In its opinion holding the State had not shown that the vehicle was used for selling or keeping a controlled substance, the Court
 
 *564
 
 reiterated: "the focus of the inquiry is on the
 
 use
 
 , not the contents, of the vehicle."
 
 Id
 
 . at 34,
 
 442 S.E.2d at 30
 
 . Recognizing that while the contents of a vehicle are relevant in the determination of whether the vehicle was used for the sale of drugs, the presence of a marijuana cigarette did not alone "implicate the car with the sale of drugs."
 
 Id
 
 . at 33,
 
 442 S.E.2d at 30
 
 . The Court also cited cases in which the presence of drugs, together with other incriminating circumstances - such as the defendant's financing and supervision of a place known for drug transactions, or the presence of numerous items of drug paraphernalia or large amounts of cash - supported "[t]he determination of whether a vehicle, or a building, is used for keeping or selling controlled substances will depend on the totality of the circumstances."
 
 Id
 
 . at 34,
 
 442 S.E.2d at 30
 
 .
 

 B.
 
 State v. Dickerson
 

 This Court's decision in
 
 Miller I
 
 also cites
 
 State v. Dickerson
 
 ,
 
 152 N.C. App. 714
 
 ,
 
 568 S.E.2d 281
 
 (2002), as support to show the State's evidence of a single sale is "insufficient to withstand his motion to dismiss."
 
 Miller I
 
 ,
 
 2018 WL 3734368
 
 at * 2.
 

 In
 
 Dickerson
 
 , the defendant was arrested and charged with, among other things, "keeping and/or maintaining a motor vehicle for the sale and/or delivery of cocaine."
 
 152 N.C. App. at 715
 
 ,
 
 568 S.E.2d at 281
 
 . The
 
 *520
 
 defendant had been charged after completing a single cocaine sale to a law enforcement officer.
 
 Id
 
 . A police informant arranged an undercover drug purchase from the defendant. The defendant met the informant and the undercover officer in a parking lot behind the informant's apartment
 
 .
 
 Id.
 

 When the informant and officer arrived, the defendant was seated in the passenger seat and an unidentified person was in the driver's seat of the vehicle.
 
 Id
 
 . It was later determined that the vehicle was registered to the defendant.
 
 Id
 
 .
 

 This Court cited the now abrogated language from
 
 Mitchell
 
 and relied upon the Court's statement in
 
 Mitchell
 
 "[t]hat an individual within a vehicle possesses marijuana on one occasion cannot establish ... the vehicle is 'used for keeping' marijuana; nor can one marijuana cigarette found within the car establish that element."
 
 Id
 
 . at 716,
 
 568 S.E.2d at 282
 
 (quoting
 
 Mitchell
 
 ,
 
 336 N.C. at 33
 
 ,
 
 442 S.E.2d at
 
 30 ). The State had presented no evidence in addition to the "[d]efendant having been seated in a vehicle when the cocaine purchase occurred."
 
 Id
 
 . at 716-17,
 
 568 S.E.2d at 282
 
 .
 

 This Court held "the fact that a defendant was in his vehicle on one occasion when he sold a controlled substance does not by itself demonstrate the vehicle was kept or maintained to sell a controlled substance[ ]" and reversed the defendant's conviction of keeping and/or maintaining a motor vehicle for the sale and/or delivery of cocaine.
 
 Id
 
 . We need not address whether
 
 Rogers
 
 would require a different outcome in
 
 Dickerson
 
 , as
 
 Dickerson
 
 does not singularly control the outcome of the present case.
 

 C.
 
 State v. Rogers
 

 In
 
 State v. Rogers
 
 , law enforcement was familiar with the defendant after a months-long drug investigation. --- N.C. at ----, 817 S.E.2d at 152. A detective obtained information implicating the defendant in drug activity that "needed to be acted upon that day."
 
 Id.
 
 The detective also learned that the defendant would be driving a particular white Cadillac, registered to another person, and staying in a particular room of a specific hotel.
 
 Id.
 
 at ----, 817 S.E.2d at 152-53.
 

 The officers followed the defendant as he drove around and pulled him over to serve outstanding arrest warrants.
 
 Id
 
 . While the defendant was held in police custody, he received numerous text messages containing the slang term, "lick," which the officer knew to describe someone who purchases drugs.
 
 Id
 
 . After obtaining a search warrant, the officers searched the defendant's white Cadillac and found two purple plastic baggies containing cocaine in the space covering the gas cap.
 
 Id.
 
 The
 
 *521
 
 gas cap release door was only operated from inside of the car.
 
 Id
 
 . Inside the car, the officers found a marijuana cigarette, $ 243.00 in cash hidden inside a boot and a months' old car service receipt for the white Cadillac with the defendant's name on it.
 
 Id.
 
 At the defendant's hotel room, officers found similar purple plastic baggies
 
 *565
 
 containing larger amounts of cocaine, scales and small zip-lock bags.
 
 Id.
 

 The issues before the Court in
 
 Rogers
 
 were: (1) whether there was substantial evidence tending to show the defendant kept or maintained the Cadillac; and, (2) whether there was substantial evidence the car was used for the keeping of controlled substances. The Court answered the first question in the affirmative, holding "the word 'keep,' in the 'keep or maintain' language of subsection 90-108(a)(7), refers to possessing something for at least a short period of time-or intending to retain possession of something in the future-for a certain use."
 
 Id.
 
 at ----, 817 S.E.2d at 154. The Court noted not only had officers observed the defendant arrive and depart from his hotel room driving the white Cadillac, a service receipt for that vehicle bearing the defendant's name was found inside of the car. The receipt was dated two and a half months prior to the defendant's arrest.
 
 Id.
 

 With respect to the second question, "used for the keeping of" controlled substances, the Court in
 
 Rogers
 
 concluded that the defendant was using the car "to store crack cocaine when he was arrested."
 
 Id.
 
 at ----, 817 S.E.2d at 152. To reach this conclusion, the Court re-analyzed
 
 Mitchell
 
 .
 

 Mitchell
 
 interpreted "the keeping ... of [drugs]" to mean "not just possession, but possession that occurs over a duration of time." But the statutory text does not require that drugs be kept for "a duration of time." As we have seen, the linchpin of the inquiry into whether a defendant was using a vehicle, building, or other place "for the keeping ... of" drugs is whether the defendant was using that vehicle, building, or other place for the storing of drugs. So, for instance,
 
 when the evidence indicates that a defendant has possessed a car for at least a short period of time, but that he had just begun storing drugs inside his car at the time of his arrest, that defendant has still violated subsection 90-108(a)(7)-even if, arguably, he has not stored the drugs for any appreciable "duration of time."
 
 The critical question is whether a defendant's car is used to store drugs, not how long the defendant's car has been used to store drugs for. As a result, we reject
 
 *522
 
 any notion that subsection 90-108(a)(7) requires that a car kept or maintained by a defendant be used to store drugs for a
 
 certain minimum period of time
 
 -or that evidence of drugs must be found in the vehicle, building, or other place on more than one occasion-for a defendant to have violated subsection 90-108(a)(7).
 
 But again, merely having drugs in a car (or other place) is not enough to justify a conviction
 

 under subsection 90-108(a)(7)
 
 .
 
 The evidence and all reasonable inferences drawn from the evidence must indicate, based "on the totality of the circumstances," that the drugs are also being stored there.
 
 To the extent that
 
 Mitchell
 
 's "duration of time" requirement conflicts with the text of subsection 90-108(a)(7), therefore, this aspect of
 
 Mitchell
 
 is disavowed.
 

 Id.
 
 at ----, 817 S.E.2d at 156-57 (internal citations omitted) (emphasis supplied).
 

 Rogers
 
 specifically states the result reached in
 
 Mitchell
 
 is correct, but
 
 Mitchell's
 
 reasoning that "keep" "denotes not just possession, but possession that occurs over a duration of time" was an incorrect interpretation of
 
 N.C. Gen. Stat. § 90-108
 
 (a)(7).
 
 Rogers
 
 , --- N.C. at ----, 817 S.E.2d at 156. Our prior opinion in
 
 Miller I
 
 specifically cites to this now abrogated portion of
 
 Mitchell
 
 .
 

 Rogers
 
 ' disavowal and removal of the "duration of time" of possession does not undermine our holding that an isolated or single incident of Defendant selling a controlled substance from his home fails to demonstrate that he "used" or maintained the home to keep or sell drugs in violation of § 90-108(a)(7). After clarifying the term "keep" as used in each clause of the crime of maintaining a dwelling, our Supreme Court in
 
 Rogers
 
 qualified,
 

 But again, merely having drugs in a car (or other place) is not enough to justify a conviction under subsection 90-108(a)(7).
 
 The evidence and all reasonable inferences drawn from the evidence must indicate, based "on the totality of the circumstances," that the drugs are also being stored there.
 

 *566
 

 Rogers
 
 , --- N.C. at ----, 817 S.E.2d at 157 (internal citations omitted) (emphasis supplied).
 

 The State's evidence tends to show that drugs were kept on Defendant's property on this one occasion. The question is whether the
 
 *523
 
 evidence shows he possessed the property for the purpose of selling or keeping cocaine.
 

 III. Totality of the Circumstances
 

 "In determining whether a defendant maintained a dwelling for the purpose of selling illegal drugs, this Court has looked at factors including the amount of drugs present and paraphernalia found in the dwelling."
 
 State v. Battle
 
 ,
 
 167 N.C. App. 730
 
 , 734,
 
 606 S.E.2d 418
 
 , 421 (2005) (emphasis omitted). Our Court has also noted that the discovery of "a large amount of cash" in the dwelling or building can indicate that a particular place is being used to keep or sell controlled substances.
 
 State v. Frazier
 
 ,
 
 142 N.C. App. 361
 
 , 366,
 
 542 S.E.2d 682
 
 , 686 (2001).
 

 State v. Williams
 
 ,
 
 242 N.C. App. 361
 
 , 373,
 
 774 S.E.2d 880
 
 , 889 (2015),
 
 disc. review denied
 
 , --- N.C. ----,
 
 782 S.E.2d 516
 
 (2016).
 

 In
 
 Williams
 
 , the State presented evidence tending to show a bag containing almost 40 grams of a controlled substance "was discovered inside the pocket of a pair of men's pants within [d]efendant's bedroom closet alongside another plastic bag, which contained 'numerous little corner baggies.' "
 
 Id
 
 . Digital scales and U.S. currency of $ 460.00 in twenty-dollar bills were also found in the same bedroom. The State offered testimony that the corner baggies and digital scales are typically used to package and sell drugs.
 

 Id.
 

 Testimony was also admitted that "purchases of controlled substances are frequently made in $ 20 increments."
 

 Id.
 

 This Court held this evidence was sufficient to permit "a reasonable jury to conclude that the residence in question was being used for keeping or selling controlled substances."
 
 Id
 
 . (quoting
 
 State v. Shine,
 

 173 N.C. App. 699
 
 , 708,
 
 619 S.E.2d 895
 
 , 900 (2005) (evidence that digital scales "of the type frequently used to weigh controlled substances for sale" were found in residence in close proximity to two bags of cocaine and scrap papers with names and dollar amounts written on them was sufficient to show residence was used for keeping or selling controlled substances)).
 

 The Supreme Court also cited this Court's prior decision in
 
 State v. Rich
 
 ,
 
 87 N.C. App. 380
 
 ,
 
 361 S.E.2d 321
 
 (1987), which held that the discovery of cocaine along with evidence of "materials related to the use and sale" of drugs, such as "numerous small plastic bags, and 'tools commonly used in repackaging and selling cocaine' " was sufficient to
 
 *524
 
 sustain the defendant's conviction under
 
 N.C. Gen. Stat. § 90-108
 
 (a)(7).
 
 Williams
 
 ,
 
 242 N.C. App. at 373
 
 ,
 
 774 S.E.2d at
 
 889 (citing
 
 Rich
 
 ,
 
 87 N.C. App. at 383-84
 
 ,
 
 361 S.E.2d at
 
 324 ).
 

 The holdings in
 
 Williams
 
 and
 
 Rich
 
 are not anomalous. Prior precedents have consistently held the State must produce other incriminating evidence to show that based "on the totality of the circumstances," the vehicle or building was used for selling or keeping the controlled substance.
 
 See
 
 ,
 
 e.g.,
 

 State v. Baxter
 
 ,
 
 285 N.C. 735
 
 , 738,
 
 208 S.E.2d 696
 
 , 698 (1974) ("jury could reasonably infer an intent to distribute from the amount of the substance found, the manner in which it was packaged and the presence of other packaging materials");
 
 State v. Cowan
 
 ,
 
 194 N.C. App. 330
 
 , 337,
 
 669 S.E.2d 811
 
 , 817 (2008) (trial court did not err in denying the defendant's motion to dismiss the charge of maintaining a dwelling where there was evidence that the "defendant possessed controlled substances, 'materials related to the use and sale' of controlled substances, and firearms");
 
 State v. Simpson
 
 ,
 
 230 N.C. App. 119
 
 , 122,
 
 748 S.E.2d 756
 
 , 759 (2013) (evidence showing only that the defendant and another used controlled substances in the defendant's vehicle insufficient to show that the defendant "allowed others to resort to his vehicle to consume controlled substances" in violation of § 90-108(a)(7) ).
 

 As restated in
 
 Rogers
 
 , the State must produce other incriminating evidence of the "totality of the circumstances" and more than just evidence of a single sale of illegal drugs or "merely having drugs in a car (or other place)" to support a conviction under this
 
 *567
 
 charge.
 
 Rogers
 
 , --- N.C. at ----, 817 S.E.2d at 156.
 

 Here, the State offered no evidence showing any drugs or drug paraphernalia, scales, residue, baggies, large amounts of cash, weapons, or other implements of the drug trade, were observed or seized from Defendant's home. The State offered no evidence of any other drug sales taking place at Defendant's home, beyond the sale at issue.
 

 The Supreme Court's holding in
 
 State v. Rogers
 
 and this Court's other cases involving maintaining a dwelling for keeping or selling controlled substances support and confirm this Court's unanimous conclusion in
 
 Miller I
 
 . Defendant's conviction for maintaining a dwelling was properly reversed for the trial court's failure to grant Defendant's motion to dismiss at trial. Under "the totality of the circumstances," "merely having drugs in a car [or residence] is not enough to justify a conviction under subsection 90-108(a)(7)."
 
 Rogers
 
 , --- N.C. at ----, 817 S.E.2d at 157.
 

 *525
 

 IV. Conclusion
 

 State v. Rogers
 
 is distinguishable from the instant case in that it involves the keeping of drugs in a motor vehicle, where other drugs and incriminating evidence of ongoing sales of drugs were present.
 
 Rogers
 

 '
 
 disavowal of the duration of time language in
 
 State v. Mitchell
 
 does not compel or mandate a different outcome in the present case.
 

 Under the required consideration of "the totality of the circumstances," the State failed to present sufficient other incriminating evidence, beyond a single sale, to show Defendant kept or maintained a dwelling for the keeping or sale of cocaine. As this Court previously held, the trial court erred by denying Defendant's motion to dismiss that count. Defendant's conviction of maintaining a dwelling for the keeping or sale of cocaine is reversed.
 
 It is so ordered
 
 .
 

 REVERSED.
 

 Chief Judge McGEE and Judge ZACHARY concur.