IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 23-544

Filed 3 December 2024

Union County, Nos. 20 CRS 28, 20 CRS 54202-03

STATE OF NORTH CAROLINA

v.

CHARLES LEON GARMON, Defendant.

Appeal by Defendant from judgments entered 4 August 2022 by Judge Keith O. Gregory in Union County Superior Court. Heard in the Court of Appeals 5 March 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Zachary K. Dunn, for the State.*
>
> *Jarvis John Edgerton, IV, for defendant-appellant.*

STADING, Judge.

Charles L. Garmon ("Defendant") appeals from judgments entered 4 August 2022 after a jury found him guilty of trafficking in opioids by possession, trafficking in opioids by transportation, possession of drug paraphernalia, and maintaining a vehicle for keeping or selling controlled substances—for which Defendant was sentenced following his guilty plea of attaining habitual felon status. On appeal, Defendant argues the trial court committed error by failing to dismiss his charge for maintaining a vehicle for keeping or selling controlled substances. Defendant also

filed a motion for appropriate relief challenging his plea to attaining habitual felon status. After careful review, we conclude the trial did not commit error by denying Defendant's motion to dismiss. However, because we are bound by precedent, we must grant his motion for appropriate relief.

## I.     Factual and Procedural Background

The record tends to reflect that on 12 October 2020, the Union County Sheriff's Office ("UCSO") received information from a confidential informant that led to the planning of a drug interdiction operation that same day. The law enforcement officers involved were informed to look for a small, silver sedan with body damage.

Sergeant Chris Little, as part of the UCSO interdiction team, was sent to a highway intersection to look out for a vehicle matching the description provided by the informant. He spotted the corresponding vehicle—a silver Hyundai with body damage. Sergeant Little recognized the driver and sole occupant as Defendant—who Sergeant Little knew did not possess a valid driver's license. Sergeant Little followed Defendant for a short time and pulled him over.

When asked for his license and registration, Defendant told Sergeant Little that he did not have a license. Sergeant Little placed Defendant under arrest, and additional officers arrived at the scene to conduct a canine search of the car.

Detective Kaitlin Robillard of the UCSO arrived with a canine to assist with the search. The canine alerted to the driver's side door, and Detective Robillard searched the interior of the car. Detective Robillard found a black bookbag on the

front passenger floorboard. The bookbag contained a digital scale, a marijuana grinder, plastic bags, a leafy green substance, a bag with a crystallized substance, a bag with white powder, and some pills in a pill bottle. The pills and powder tested positive for fentanyl, with a total tested weight of 4.41 grams. She also found a handgun under the front passenger seat and, in a cupholder, a folded piece of brown paper with a white, powdery substance on it. Among other items also found in the car: social security card, a hotel receipt from the night before, a letter from Bank of America, and a package—all of which had Defendant's name on them. A box of ammunition was also located in the vehicle. Defendant was transported to the Sheriff's Office for arrest processing.

On 14 January 2021, Defendant was indicted for possession of a firearm by a felon, trafficking in opioids by possession, trafficking in opioids by transportation, possession of drug paraphernalia, and keeping or maintaining a vehicle for keeping or selling controlled substances. He was also indicted for the status offense of habitual felon. At Defendant's trial, he moved to dismiss all charges at the close of the State's evidence—which was denied.

The jury found Defendant guilty of both drug trafficking charges, possession of drug paraphernalia, and maintaining a vehicle for keeping or selling controlled substances. But the jury found Defendant not guilty of possession of a firearm by a felon. Defendant pleaded guilty to his habitual felon status.

The trial court entered a consolidated judgment on the two trafficking and drug

paraphernalia charges, sentencing Defendant to 73–93 months' imprisonment. In a separate judgment, the trial court sentenced Defendant in accordance with his habitual felon status on the maintaining a vehicle for keeping or selling controlled substances conviction to 44–65 months' imprisonment, to run consecutively with his other sentence. Defendant timely entered a notice of appeal.

## II.     Analysis

We consider whether the State presented sufficient evidence that Defendant (1) kept or maintained the silver Hyundai and (2) did so for the purpose of keeping or selling controlled substances in order to withstand Defendant's motion to dismiss the charge of keeping or maintaining a vehicle for the keeping or selling of controlled substances. We further consider whether the Defendant's habitual felon indictment was defective pursuant to his motion for appropriate relief.

### A. Standard of Review

We review the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). When conducting *de novo* review, this Court "considers the matter anew and freely substitutes its own judgment for that of the trial court." *State v. Sanders*, 208 N.C. App. 142, 144, 701 S.E.2d 380, 382 (2010).

Defendant argues that the State failed to produce evidence sufficient to support his conviction for keeping a vehicle under N.C. Gen. Stat. § 90-108(a)(7) (2023). When reviewing a motion to dismiss for sufficiency of evidence, we determine

whether "there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Osborne*, 372 N.C. 619, 626, 831 S.E.2d 328, 333 (2019) (citation omitted). Substantial evidence is the amount "necessary to persuade a rational juror to accept a conclusion." *Id.* We consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference drawn from that evidence. *Id.* "[W]hen the evidence only raises a suspicion of guilt, a motion to dismiss must be granted." *State v. Foye*, 220 N.C. App. 37, 41, 725 S.E.2d 73, 77 (2012) (citation omitted). However, when there is "more than a scintilla of competent evidence" to support the charge, the case must be submitted to the jury. *Id.* We determine "whether a reasonable inference of the defendant's guilt may be drawn from the circumstances." *State v. Lee*, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998).

To convict a defendant of maintaining a vehicle for the keeping or selling of controlled substances, the State must show that the defendant (1) knowingly (2) kept or maintained (3) a vehicle (4) which was used for keeping or selling (5) of controlled substances. *State v. Rogers*, 371 N.C. 397, 401, 817 S.E.2d 150, 153 (2018) (citation omitted). At issue in this case is whether substantial evidence was provided of the second and fourth elements: that Defendant "kept or maintained" the vehicle and that he did so for the purpose of "keeping or selling" controlled substances.

### B. Keeping or Maintaining a Vehicle

A person "keeps" a vehicle under the meaning of subsection 90-108(a)(7) when

he possesses a vehicle "for at least a short period of time" or intends to retain possession of it in the future. *Rogers*, 371 N.C. at 402, 817 S.E.2d at 154. To "maintain" a vehicle is to "bear the expense of; carry on . . . hold or keep in an existing state or condition." *State v. Moore*, 188 N.C. App. 416, 423, 656 S.E.2d 287, 292 (2008) (citation omitted). Whether a vehicle is "kept or maintained" for the keeping or selling of controlled substances is determined by the totality of the circumstances. *State v. Hudson*, 206 N.C. App. 482, 492, 696 S.E.2d 577, 584 (2010). Factors that contribute to this totality include occupancy of the vehicle, the extent of the defendant's use of the vehicle, the vehicle's title and ownership, property interest in the vehicle, contribution to vehicle payments, and payment for repairs and maintenance. *State v. Weldy*, 271 N.C. App. 788, 791, 844 S.E.2d 357, 361 (2020). As this determination is made under the totality of the circumstances, no single factor is dispositive. *Hudson*, 206 N.C. App. at 492, 696 S.E.2d at 584.

Defendant compares this case to our decision in *State v. Weldy,* where we held there was insufficient evidence that the defendant "kept or maintained" the vehicle. 271 N.C. App. at 797, 844 S.E.2d at 365 (citation omitted). In that case, police observed the defendant driving the vehicle for approximately twenty-five minutes. *Id*. at 792, 844 S.E.2d at 361. He stopped at a hotel, came outside after a few minutes, and was pulled over as he drove away. *Id.* at 792, 844 S.E.2d at 362. "Defendant's possession of the car for approximately 20–25 minutes, standing alone, was insufficient evidence that Defendant 'kept or maintained' the car." *Id.* at 794, 844

S.E.2d at 363.

As in *Weldy,* there is no evidence in this case that Defendant "had title to or owned the vehicle, had a property interest toward the vehicle, paid toward the purchase of the vehicle, or paid for repairs to or maintenance of the vehicle."  *Id.* Therefore, there is no evidence that Defendant "maintained" the car, and we must determine if the State provided sufficient evidence that he "kept" it.  *Id.*

While the evidence in *Weldy* was of such minimal possession that an inference of "keeping" was not justified, there is no specific period of possession that indicates a car was or was not "kept," as that determination is made by examining the totality of the circumstances.  In *State v. Rogers*, for example, the defendant was observed driving a Cadillac for approximately ninety minutes, and the State additionally introduced a service receipt found inside the car, bearing the defendant's name and a date from about two and a half months before his arrest.  371 N.C. at 402, 817 S.E.2d at 154.  While this receipt raised a reasonable inference that the defendant had possessed the car for at least that amount of time, our Supreme Court noted that it did not intend to imply that possession for that long was necessary to constitute "keeping," though it declined to take a position on whether keeping a car for "a much shorter period of time" would suffice.  *Id.* at 403 n.2, 817 S.E.2d at 154 n.2.

This Court has recognized possession for a significantly shorter period than in *Rogers* as substantial evidence of "keeping" a vehicle.  *Hudson*, 206 N.C. App. at 492, 696 S.E.2d at 584; *cf. Rogers*, 371 N.C. at 402, 817 S.E.2d at 154.  In *State v. Hudson*,

the defendant was pulled over while driving a truck pulling a car carrier, and drugs were found in the trunk of one of the cars being transported. 206 N.C. App. at 484, 696 at 580. The bill of lading showed that the defendant picked up the car on 21 October 2008 and "maintained possession as the authorized bailee continuously and without variation for two days before being pulled over . . . ." *Id.* at 492, 696 S.E.2d at 584. We held this was sufficient possession of the car to support the defendant's conviction. *Id.*

This case falls somewhere in between *Weldy* and *Hudson*. While police only observed Defendant driving the vehicle for a short period of time, several items were found inside, tending to show Defendant controlled the vehicle for a longer period. Officers found a hotel receipt from the day before, as well as mail and a social security card with Defendant's name on them. This evidence is sufficient to give rise to a valid inference that Defendant possessed the vehicle to an extent sufficient to satisfy the statute's requirement that he kept the vehicle. N.C. Gen. Stat. § 90-108(a)(7).

## C. Keeping or selling controlled substances

When viewing the evidentiary record under a light most favorable to the State, we discern no error from the trial court's denial of Defendant's motion to dismiss because reasonable inferences can be drawn that Defendant also "kept" the vehicle for the purposes of keeping or selling controlled substances. Our Supreme Court in *State v. Rogers* clarified that "[b]y making it a crime to 'keep' a car 'which is used for the keeping' of controlled substances, subsection 90-108(a)(7) uses the word 'keep' and

its variant 'keeping' to mean different things." 371 N.C. at 403, 817 S.E.2d at 155. Therefore, we look to, in a light most favorable to the State, whether the State produced substantial evidence under the totality of the circumstances that Defendant stored drugs in his car. *Id.*

Our courts consider factors such as: the amount of controlled substances found in the vehicle; their packaging; whether the controlled substances were hidden in the vehicle; whether there was a large amount of cash; and the presence of weapons and "other implements of the drug trade." *State v. Miller*, 264 N.C. App. 517, 524, 826 S.E.2d 562, 566–67 (2018) (citations omitted). Our inquiry focuses on the vehicles use rather than its contents. *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156 (citing *State v. Mitchell*, 336 N.C. 22, 33, 442 S.E.2d 24, 30 (1994)). And "merely possessing or transporting drugs inside a car—because, for instance, they are in an occupant's pocket or they are being taken from one place to another—is not enough to justify a conviction under the 'keeping' element of subsection 90-108(a)(7)." *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156 (citing *Mitchell*, 336 N.C. at 33, 442 S.E.2d at 30).

Defendant principally relies on whether the controlled substances were hidden in the vehicle to control our analysis. We agree that whether the controlled substances are hidden in the vehicle is a factor to consider; however, such a factor standing alone is not dispositive. In *State v. Rogers*, small bags of cocaine hidden in the gas-cap compartment of the defendant's car, combined with evidence of the same bags and a digital scale in their hotel room, sufficiently raised an inference that the

defendant split up portions of cocaine in their room and stored those portions in the vehicle for sale. 371 N.C. at 404, 817 S.E.2d at 155. The *Rogers* opinion cautioned that "merely having drugs in a car (or other place) is not enough to justify a conviction" under subsection 90-108(a)(7). *Id.* at 406, 817 S.E.2d at 157. And "the linchpin of the inquiry into whether a defendant was using a vehicle, building, or other place for the keeping of drugs is whether the defendant was using the vehicle, building, or other place for the storing of drugs." *Id.* at 406, 817 S.E.2d at 156 (cleaned up).

We upheld a conviction under subsection 90-108(a)(7) in *State v. Dudley*, whereby the defendant stored trafficking amounts of methamphetamine in a false-bottomed tire sealant can. 270 N.C. App. 775, 783, 842 S.E.2d 615, 621 (2020). Not mentioned in *Dudley* was where within the vehicle officers located the false-bottomed can. *See generally id.* The *Dudley* court looked at the totality of the circumstances to determine whether the defendant attempted to hide the methamphetamine and reiterated "'[a] defendant who wants to store contraband will . . . want to store it in a hidden place, which is exactly what putting the' methamphetamine in the false-bottomed tire-sealant can would accomplish." *Id.* (citing *Rogers*, 371 N.C. at 404, 817 S.E.2d at 155). The false-bottomed can is a "small movable thing[ ]" which a person could easily place within a car and remove it "soon thereafter." *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156. We do not see the hidden factor as one requiring such permanent placement or attachment to the vehicle. Instead, we look at the

defendant's effort to hide the controlled substances. *Dudley*, 270 N.C. App. at 782, 842 S.E.2d at 620 ("In this case, as in *Rogers* and *Alvarez*, Defendant attempted to hide the [controlled substance].")

And we reached a similar result in *State v. Alvarez*, whereby the defendant stored cocaine, wrapped in plastic and oil, in a false-bottomed compartment of their truck. 260 N.C. App. 571, 575–76, 818 S.E.2d 178, 182–23 (2018). The question in *Alvarez* was whether "the State presented [sufficient] evidence that [the defendant] kept or maintained his pickup truck 'over a duration of time' for the purpose of keeping or selling cocaine." *Id.* at 573, 818 S.E.2d at 181. We reasoned that under the totality of the circumstances, viewing the evidence in the light most favorable to the State, the defendant knew of and constructed the false-bottom compartment. The State thus produced sufficient evidence that the defendant kept or maintained the vehicle "over a duration of time" for the purposes of keeping or selling cocaine. *Id.* at 576, 818 S.E.2d at 182–83.

As was done in *Rogers*, *Dudley*, and *Alvarez*, viewing the evidence in the light most favorable to the State and drawing all reasonable inferences from the evidence, a reasonable jury could find that Defendant used the vehicle to keep controlled substances. The evidence here tends to show that law enforcement was deployed as part of a drug interdiction team to look out for a vehicle matching the one driven by Defendant. Upon arresting Defendant for driving without a license, a canine examined the vehicle. After a positive alert, the vehicle was searched. The search

revealed both a handgun under the front passenger seat and a black bookbag. Included among the items located within the bookbag were a digital scale, a marijuana grinder, plastic bags—some with removed corners, a leafy green substance, a bag with a crystallized substance, a bag with white powder, and pills in a bottle. In the context of the items found in the bookbag, items scattered about the car included a handgun under the passenger seat and a folded piece of brown paper with a white powdery substance inside. The powder in the cupholder was collected as evidence but not tested in the laboratory since testing was only conducted "to a potential highest charge."[1] The bag with white powder and pills tested positive for fentanyl in the amount of 4.41 grams. The evidence located about the vehicle, including the bookbag and its contents, and all reasonable inferences drawn therefrom, based on the totality of the circumstances, support that Defendant was using the vehicle for keeping or selling drugs. The trial court correctly denied Defendant's motion to dismiss the charge of keeping or maintaining a vehicle for keeping or selling controlled substances.

### III.   Motion for Appropriate Relief

Last, we consider Defendant's motion requesting resentencing "because the habitual felon indictment pre-dated the offense date of all the substantive offenses

---

[1] The other tested items established a trafficking weight of fentanyl and testing this additional substance would not have resulted in a higher charge.

[he] was tried for." Defendant contends since the habitual felon indictment predates the offense date of the felonies for which he was being tried, the trial court thus lacked subject matter jurisdiction pursuant to a prior panel's decision from this Court. *See State v. Ross*, 221 N.C. App. 185, 727 S.E.2d 370 (2012). Since we are bound by precedent, after careful consideration, we grant his motion.

"On appeal, we review the sufficiency of an indictment de novo." *State v. McKoy*, 196 N.C. App. 650, 652, 675 S.E.2d 406, 409 (2009). "When an indictment is fatally defective, the trial court acquires no subject matter jurisdiction, and if it assumes jurisdiction a trial and conviction are a nullity." *Ross*, 221 N.C. App. at 188, 727 S.E.2d a 372 (quoting *State v. Frink*, 177 N.C. App. 144, 146, 627 S.E.2d 472, 473 (2006)). Pursuant to the Habitual Felons Act, "[t]he indictment charging the defendant as an habitual felon shall be separate from the indictment charging him with the principal felony." N.C. Gen. Stat. § 14-7.3 (2023). "Properly construed this [A]ct clearly contemplates that when one who has already attained the status of an habitual felon is indicted for the commission of another felony, that person may then be also indicted in a separate bill as being an habitual felon." *State v. Allen*, 292 N.C. 431, 433, 233 S.E.2d 585, 587 (1977). Moreover, "the proceeding by which the [S]tate seeks to establish that [the] defendant is an habitual felon is necessarily ancillary to a pending prosecution for the 'principal,' or substantive, felony." *Id*. at 433–34, 233 S.E.2d 585, 587.

In *State v. Ross*, the defendant "was initially indicted as an habitual felon on

22 September 2008." 221 N.C. App. at 190, 727 S.E.2d at 374. Then a superseding habitual felon indictment correcting a file number was returned on 11 May 2009. *Id.* Thereafter, on 20 July 2009, the defendant was indicted for "bribery of a juror, felony obstruction of justice, and solicitation to commit bribery of a juror." *Id.* at 187, 727 S.E.2d at 372. On appeal, the defendant argued that "the trial court lacked jurisdiction . . . because the habitual felon indictment was returned months before the June 2009 crimes occurred." *Id.* at 188, 727 S.E.2d at 372. And so, a prior panel of this Court determined "[i]t is difficult to see how the habitual felon indictment could attach as ancillary to felonies that had not yet occurred." *Id.* at 190, 727 S.E.2d at 374 (quoting *State v. Flint*, 199 N.C. App. 709, 718, 682 S.E.2d 443, 448 (2009)). Citing *Allen*, the Court reasoned, "[a]t the time the habitual felon indictments were returned, there was no pending prosecution for the June 2009 crimes "to which the habitual felon proceeding could attach as an ancillary proceeding" because the crimes had not yet happened. *Ross*, 221 N.C. App. at 190, 727 S.E.2d at 374 (citing *Allen*, 292 N.C at 436, 233 S.E.2d at 589). The Court thus held "under the specific facts of this case, the habitual felon indictment was not ancillary to the substantive felony indictments for the June 2009 crimes." *Ross*, 221 N.C. App. at 190, 727 S.E.2d at 374.

The present case is factually analogous to *Ross*. Here, Defendant was indicted for his habitual felon status on 14 January 2020. However, the principal felony with an enhanced sentence due to Defendant's habitual felon status was committed on 12 October 2020. Defendant was not indicted for this underlying felony until 14 January

2021. Thus, like *Ross*, "[a]t the time the habitual felon indictments were returned, there was no pending prosecution . . . 'to which the habitual felon proceeding could attach as an ancillary proceeding' because the crimes had not yet happened." 221 N.C. App. at 190, 727 S.E.2d at 374 (quoting *Allen*, 292 N.C at 436, 233 S.E.2d at 589). Consequently, on account of the ruling by a prior panel of this Court, we are compelled to hold that the trial court lacked jurisdiction over the habitual felon charge and erred by accepting Defendant's habitual felon guilty plea. *See In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989)) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Following the holding of *Ross*, "we vacate Defendant's habitual felon guilty plea and remand to the trial court for resentencing within appropriate sentencing ranges." 221 N.C. App. at 191, 727 S.E.2d at 374.

In so holding, we note that our plain reading of the requirements set forth in N.C. Gen. Stat. § 14-7.3 begs the question of whether the trial court is always divested of subject matter jurisdiction when presented with facts such as those in this case. An indictment for attaining habitual felon status is a sentence enhancement. *See Allen*, 292 N.C. at 435, 233 S.E.2d at 588 ("The only reason for establishing that an accused is an habitual felon is to enhance the punishment which would otherwise be appropriate for the substantive felony which he has allegedly committed while in such a status."). Unless Defendant's record has changed in some manner, *e.g.*, by way

of expunction, the date of a habitual felon would not necessarily undermine statutory or constitutional protections. Accordingly, panels of this Court and future litigants could benefit from the guidance of our Supreme Court addressing this concern.

## IV.    Conclusion

For the reasons discussed above, we hold that the trial court did not commit error by denying Defendant's motion to dismiss. However, we are bound by existing case law to vacate and remand this matter to the trial court for resentencing.

NO ERROR IN PART; VACATED IN PART; REMANDED FOR RESENTENCING.

Judge GRIFFIN concurs.

Judge HAMPSON dissents by separate opinion.

HAMPSON, Judge, dissenting.

The primary issue before this Court is whether evidence of drugs found in a backpack on the front passenger floorboard of a vehicle, standing alone, can support a finding that Defendant kept or maintained the vehicle for the purpose of keeping or selling drugs. Applying our existing precedent, I respectfully disagree with the majority's conclusion and would hold that it cannot. As such, in my view, the trial court erred by not dismissing this charge.

A conviction for Maintaining a Vehicle for the Keeping or Selling of Controlled Substances requires that the State show the defendant (1) knowingly (2) kept or maintained (3) a vehicle (4) which was used for the keeping or selling (5) of controlled substances. N.C. Gen. Stat. § 90-108(a)(7) (2023); *State v. Rogers*, 371 N.C. 397, 401, 817 S.E.2d 150, 153 (2018). Defendant raises only the second and fourth elements as issues on appeal. I agree with the majority that the State provided sufficient evidence that Defendant kept or maintained the vehicle, but I disagree that the State has shown Defendant used the vehicle for the purpose of "keeping or selling" controlled substances.

Defendant was convicted at trial for trafficking in opioids by possession and transportation and does not contest those convictions on appeal. However, our Supreme Court has made clear that Section 90-108(a)(7) does not create a separate offense simply because a controlled substance was located inside a vehicle. *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156 (citing *State v. Mitchell,* 336 N.C. 22, 33, 442 S.E.2d

24, 30 (1994)). "[M]erely possessing or transporting drugs inside a car—because, for instance, they are in an occupant's pocket or they are being taken from one place to another—is not enough to justify a conviction under the 'keeping' element of subsection 90-108(a)(7)." *Id.* Our inquiry focuses on the use of the vehicle rather than its contents. *Mitchell*, 336 N.C. at 34, 442 S.E.2d at 30.

As the majority acknowledges, the "keeping" element of the statute is satisfied by evidence showing the vehicle was used for the storage of drugs. *Rogers* at 403, 817 S.E.2d at 154. The presence of drugs in a car is not sufficient for a conviction: the State must produce "other incriminating evidence" showing that, under the totality of the circumstances, the vehicle was used to store a controlled substance. *State v. Miller*, 264 N.C. App. 517, 524, 826 S.E.2d 562, 566 (2019). In making this determination, our courts have considered factors such as the amount of controlled substances found in the vehicle, their packaging, whether the controlled substances were hidden in the vehicle, and the accompanying presence of drug paraphernalia and large amounts of cash. *State v. Weldy*, 271 N.C. App. 788, 795, 844 S.E.2d 357, 363 (2020). Our task is to determine whether the State has provided substantial evidence that, combined with reasonable inferences, indicates under the totality of the circumstances Defendant used *the vehicle* to store drugs. *Rogers*, 371 N.C. at 406, 817 S.E.2d at 157.

When drugs found in a vehicle were concealed in some way, our courts have tended to hold substantial evidence was presented showing the vehicle was used to

store those drugs. The majority relies on *Rogers, Alvarez,* and *Dudley,* each of which involved the concealing of drugs in the vehicle in question. In *Rogers* bags of cocaine were hidden in the gas cap, 371 N.C. at 404, 817 S.E.2d at 155; in *Alvarez* the defendant had stored cocaine, wrapped in plastic and oil, in a false compartment in his truck, 260 N.C. App. 571, 575–76, 818 S.E.2d 178, 182–23 (2018); and in *Dudley* methamphetamine was found hidden in a false-bottomed tire sealant can. 270 N.C. App. 775, 783, 842 S.E.2d 615, 621 (2020).

In this case, the drugs found were kept in a backpack rather than concealed in a hidden compartment. Whether or not the controlled substances were hidden is only one factor used in our analysis, but concealment is a strong indicator that the vehicle was used to store drugs. "[A] defendant who wants to store contraband will, all other things equal, want to store it in a hidden place[.]" *Rogers,* 371 N.C. at 404, 817 S.E.2d at 155. Locating drugs in a backpack, which is used to more easily carry items from place to place, does not raise a similar inference. I would hold that this is analogous to cases in which defendants were found with drugs on their person while driving, which our courts have consistently held cannot support a conviction under Section 90-108(a)(7).

When drugs are found on a defendant's person while driving a car, this generally "do[es] not implicate the car" with the sale or keeping of drugs. *Mitchell*, 336 N.C. at 33, 442 S.E.2d at 30. In *Weldy,* drugs were found in the defendant's waistband and pants pocket. 271 N.C. App. at 796, 844 S.E.2d at 364. Although the

3

drugs found were in amounts sufficient to support the defendant's trafficking convictions—56.39 grams of methamphetamine and 6.84 grams of heroin—neither possession of drugs in a car nor using the car to transport drugs is sufficient to show that the vehicle was kept for the purpose of keeping or selling controlled substances. *Id.* Accordingly, we held there was insufficient evidence to support a conviction under subsection 90-108(a)(7). *Id.* at 797, 844 S.E.2d at 365.

Similarly, in *Mitchell*, the defendant was seen with bags of marijuana in his shirt pocket before getting into his car, which led to a reasonable inference that he possessed marijuana while in his vehicle. 336 N.C. at 33, 442 S.E.2d at 30.[2] Even combined with evidence of drug paraphernalia including baggies and a scale found in the defendant's home, the Court held that while the evidence was "consistent with drug use, or with the sale of drugs generally . . . they do not implicate the car with the sale of drugs." *Id.* Nor did finding a loose marijuana cigarette in the car indicate that the defendant was using the car for the storage of drugs. *Id.* "[P]eople often leave cigarettes or other small moveable things in their cars but then take them out soon thereafter." *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156.

---

[2] *Rogers* abrogates *Mitchell* on one part of its interpretation of subsection 90-108(a)(7). The Supreme Court in *Mitchell* defined the keeping of drugs to require "not just possession, but possession that occurs over a duration of time." *Mitchell*, 336 N.C. at 32, 442 S.E.2d at 30. In *Rogers* the Court rejected this requirement that drugs be stored for a certain minimum period of time: "[t]he critical question is *whether* a defendant's car is used to store drugs, not *how long* the defendant's car has been used to store drugs for." 371 N.C. at 406, 817 S.E.2d at 156 (emphasis in original). Despite this, the *Rogers* Court recognized that *Mitchell* reached the correct result. *Id.* at 405, 817 S.E.2d at 156.

4

Though Defendant in this case did not have the drugs directly on his person, they were not concealed or secreted in the vehicle. Instead, all the drugs and paraphernalia located by law enforcement and relied on by the prosecution were kept in a backpack placed on the front passenger side floor of the car.[3] The presence of this paraphernalia and controlled substances stored in a backpack in amounts that support trafficking convictions are certainly consistent with the general use and sale of drugs. However, "they do not implicate *the car* with the sale of drugs." *Mitchell*, 336 N.C. at 33, 442 S.E.2d at 30 (emphasis added). A backpack, absent other evidence, constitutes a relatively "small moveable thing" a person typically places in a car and removes "soon thereafter." *Rogers,* 371 N.C. at 405, 817 S.E.2d at 156. There was no evidence the backpack was concealed in the vehicle. Nor was there evidence linking the car itself to any sale—past or intended—of the drugs. There was no evidence the car itself was being used for the keeping or storing of controlled substances, as all controlled substances and paraphernalia found were in the backpack. There was no evidence that the backpack was left in the car when Defendant was not driving.

The majority emphasizes our decision in *Dudley,* in which the defendant stored methamphetamine in the false bottom of a can of tire sealant. 270 N.C. App. at 783, 842 S.E.2d at 621. It notes that this can "is a 'small movable thing' which a person

---

[3] As noted above, there was evidence that a white powdery substance was located in the cupholder of the vehicle. However, the substance was not tested and no evidence introduced showing it to be a controlled substance. The State does not rely on the existence of this substance as a basis for Defendant's conviction.

could easily place within a car and remove it 'soon thereafter,'" as described in *Rogers,* but that we still held that its presence in the vehicle was sufficient to raise an inference that the vehicle was used to store drugs.

*Dudley* is distinguishable from this case. The can of tire sealant was specifically configured to conceal drugs in its false bottom: we noted it showed "Defendant attempted to hide the methamphetamine," 270 N.C. at 782, 842 S.E.2d at 620, whereas there is no indication that the backpack in this case was used to hide anything. Unlike a backpack, a can of tire sealant is not typically used to transport items. Also unlike a backpack, a can of tire sealant is an object which may reasonably be inferred to be intended to be kept in a vehicle—or at least has a circumstantial connection with a motor vehicle.

The majority's opinion in this case threatens to *sub silentio* overrule our Supreme Court's holding that merely possessing or transporting drugs in a car is insufficient to support a conviction under subsection 90-108(a)(7). *Rogers*, 371 N.C. at 405, 817 S.E.2d at 156. Under the majority's analysis, would a defendant who places drugs in a jacket pocket and then takes that jacket off in their vehicle now be guilty of keeping a vehicle for the keeping of drugs? What if that defendant places the drugs in plain sight on the passenger seat? I am unable to distinguish between transporting and keeping drugs given the majority's holding.

Indeed, in *State v. Dickerson*, this Court reasoned "the fact that a defendant was in his vehicle on one occasion when he sold a controlled substance does not by

itself demonstrate the vehicle was kept or maintained to sell a controlled substance." 152 N.C. App. 714, 716, 568 S.E.2d 281, 282 (2002). *Dickerson*—relying on Supreme Court precedent—teaches that there must be evidence which goes beyond "just possession" in the vehicle. *Id.* (internal quotations and citation omitted). Here, as in *Dickerson*, there is no such evidence.

Thus, on the facts of this case, I would conclude the State failed to provide sufficient evidence that Defendant's vehicle was used for the keeping of drugs. Therefore, the trial court erred in denying Defendant's Motion to Dismiss this charge. Consequently, I would reverse Defendant's conviction for Keeping or Maintaining a Vehicle for Keeping or Selling Controlled Substances in Union County file number 20CRS054203 and, in turn, vacate Defendant's plea to attaining Habitual Felon Status in Union County file number 20CVS000028.[4] Accordingly, I respectfully dissent from the Opinion of the Court.

---

[4] In light of the result reached by the majority opinion, however, I agree with the majority that Defendant's Motion for Appropriate Relief should be allowed and this matter should be remanded to the trial court for resentencing on his habitual felon conviction.